# CHARLESTON.

## Atkinson v. Beckett.

*(Holt, Judge, absent.)

Submitted June 11, 1890.—Decided December 17, 1890.

1. Trusts and Trustees.

As a general rule a trustee's authority over the trust-property is defined and limited by the instrument creating the trust; and he should be guided strictly by its provisions.

2. Trusts and Trustees—Contract—Sales.

Where a debtor assigns his stock of goods to a trustee to secure the payment of certain debts, and the trustee with the consent of the grantor and the secured creditors makes a sale in bulk on credit taking the notes of the purchaser payable at bank and a deed of trust on his farm to secure said notes, and said purchaser sells the goods in separate parcels to sundry persons (among them the said original trustee) with a written contract on the part of each of them to devote the proceeds of the sales of the said goods primarily to taking up said notes, such a contract between the original purchaser and the original trustee will not relieve the former's farm from the lien of the trust-deed securing his notes, except as to such creditors as may have actively participated in or expressly assented to such arrangement.

3. Contract—Exchange of Lands.

When two owners enter into an agreement to exchange several tracts of land, and nothing is said therein about any money valuation of the lands, either by the acre or otherwise, the contract will be presumed to be for an exchange in gross.

4. Contract—Exchange of Lands—Deficiency in Quantity of Land.

Though the contract be for an exchange in gross, yet if one party has been misled and deceived by the other as to the quantity of land he was getting, and thus induced to enter into the exchange, equity will decree him compensation; but where the controversy is narrowed down to a question of fact, and the evidence is conflicting, with no marked preponderance either way, and the lower court has decided against the party claiming compensation, this Court will not interfere.

*W. N. Miller* of counsel for appellants, cited:

1 Leigh 306; 32 Am. Dec. 701; 51 Am. Dec. 120; 2 Perry Tr. § 800, 808.

---

*Case submitted before Judge Holt's appointment.

*John A. Hutchinson* for appellant, Washington Smith, cited 19 W. Va. 441–519; 23 W. Va. 744; 24 Ia. 524; 29 W. Va. 212; 14 Gray 372; 135 U. S. 370; 31 N. Y. 624; 2 Bl. Comm. 323; 1 Pars. Cont. 521; 59 Cal. 528; 71 Cal. 292; 4 Wall. 517; Rawle Cov. Tit. (5th Ed.) § 297; Washb. R. Prop. (5th Ed.) 44 pl. 7; Id. 45, n. 1 and cases cited; 13 Pick. 133; 7 Ia. 296; 1 Ves. Jr. 477; 2 Vern. 482; 1 Ball & Beat. 49; Corp. Eq. Cas. 303; Myl. & Co. 561; 30 Gratt. 632; Jo. Mtg. §§ 228, 229; 41 Miss. 490; 47 Am. Rep. 467 –473.

*J. G. McClucr, R. S. Blair, Van Winkle & Ambler* and *James Hutchinson* for appellees.

*Van Winkle & Ambler* cited:
32 W. Va. 447; Id. 507; 2 Min. Inst. 602; 4 W. Va. 701; 27 W. Va. 510; 19 W. Va. 438; 22 W. Va. 247; Code, c. 139, s. 7; 10 W. Va. 187.

*James Hutchinson* cited:
Code, c. 74, ss. 5, 6; 10 Paige 275; 1 Jones (N. C.) 72; 1 Cr. Dig. 12, c. 4 s. 36, n.; 1 Waite Act. & Def. 329; 15 Gratt. 12; 1 Lom. Dig. 309, 310, 313; 12 Wheat. 493; 9 Leigh 787; 2 Min. Inst. 234, 236; 1 Wh. & Tud. Lead. Cas. 58, 62 *et seq.;* 4 Madd. 356; 2 Rand. 294; 1 Gray 567; 2 Sto. Eq. Juris. § 1127 *et seq.;* 1 Call 301; 3 Bro. Ch'y Cas. 451; 2 Root 252; 6 Binn. 102; 2 Johns. 37; 1 Del. Ch'y 1; 3 Bibb 46; 39 Mc. 560; 18 Mo. 84; 15 Pick. 428; 22 Tex. 132; 12 Am. Dec. 69; Poth. 254, 255; 19 W. Va. 439; 4 Min. Inst. 67; 29 W. Va. 131; Id. 673; 22 W. Va. 247; 2 Col. 159; 41 Am. Dec. 374; 44 Am. Dec. 448.

LUCAS, PRESIDENT:

This is an appeal from a final decree of the Circuit Court of Ritchie county, prosecuted by seven appellants, creditors, under a deed of trust executed by W. L. Jackson, to one G. S. Veach, to secure certain debts, and indemnify certain indorsers of sundry notes, payable in the first National Bank of Parkersburg. The record embraces no less than six suits, which were, however, so connected as to make it proper to consolidate them and hear them together. The

final decree, entered on the 28th day of June, 1888, disposed of the principles and adjudicated the interests arising in all of these cases. This appeal, however, covers but a small part of the ground gone over in the several cases, and I shall only recite so much of the record as is necessary to understand the opinion and decision now about to be rendered.

On the first Monday in May, 1883, partners, under the style of Atkinson & Piersol, filed their bill against William Beckett and other appropriate parties, as defendants, for the purpose of enforcing a judgment of three hundred and seventy five dollars against a farm of two hundred and twenty six acres in Ritchie county, owned by said William Beckett. As incident to the relief sought, they asked to have set aside, as fraudulent and void, a conveyance of said farm by said William Beckett to his son William B. Beckett. As this deed has been set aside by the decree of the Circuit Court, and as it was entirely proper to do so, and neither the grantor nor grantees seem to be aggrieved thereby, and have not petitioned for an appeal, I will make no further reference to that deed or its character. As further incident to the relief prayed, the bill proceeds to charge that on the 16th day of November, 1882, a deed of trust was executed by William L. Jackson to George S. Veach, trustee, for the purpose hereinbefore stated; that on the 16th day of November, 1882, subsequently, said Beckett purchased of said Veach, trustee, the whole stock of goods, etc., which had been conveyed in the trust-deed for the sum of five thousand four hundred ninety nine dollars and ninety eight cents, that being the exact amount of the debt secured, and in payment said Beckett executed to said Veach, trustee, two notes for the sum of four hundred and fifty dollars each, payable at the First National Bank of Parkersburg sixty days after their date, and five other notes of a similar character for seven hundred seventy four dollars and eighty eight cents each, payable after date, one in six months, one in nine months, one in twelve months, one in fifteen months, and one in eighteen months. To secure the payment of which said several notes, William Beckett on the 16th day of November, 1882, executed

a deed of trust to L. N. Tavenner, as trustee, on the said tract of two hundred and twenty six acres in Ritchie county.

The bill further charges that said Beckett turned over to said Veach, the trustee, two thousand two hundred dollars worth of said goods, and that said Veach sold them to one D. S. Miller, and that by this arrangement said Miller became liable for and agreed to pay the said sum of two thousand two hundred dollars on the notes of said William Beckett, mentioned in said deed of trust on the two hundred and twenty six acres, and that said Veach, trustee, agreed to release and cancel so much on the notes secured by said trust. The bill charges, further, that said Beckett reconveyed to said Veach, trustee, a stock of dry goods and groceries, a large part, if not all of them, constituting a remaining part of the stock sold by Veach, trustee, to said Beckett on the 16th day of November, 1882.

The complainants charge that the result of these transactions was to discharge and fully satisfy Beckett's notes to Veach, as above described, and to relieve and discharge the said tract of two hundred twenty six acres from the lien of said deed of trust. The bill then proceeds to allege that Washington Smith had sold said two hundred and twenty six acres to said Beckett originally, and in the deed reserved a vendor's lien to indemnify himself, his heirs, etc., in any loss or damage he might sustain by reason of any defect in, or failure of title to, or deficiency of, said land or any part thereof. The deed then proceeds to set out sundry judgments on the lien docket of Ritchie county against said Beckett, about which there is no dispute. The bill, in form and substance, is a general creditors' bill, and the prayer is that William Beckett, grantor, and William B. Beckett, grantee, etc., be made parties, and make discovery as to the consideration of the alleged fraudulent deed; that the same be cancelled and annulled; and that so much of said William Beckett's land may be sold as may be necessary to pay off the complainants' judgment, and the debts and judgments of his other creditors. They further pray that Washington Smith may be required to disclose what amount, if any, is due him from said Beckett by reason of

the vendor's lien retained by him as aforesaid, and for further and general relief.

Subsequently, on the 22d day of October, 1885, Daniel Gould, Jonah Gould, S. L. Gould, O. S. Jones, Thomas Murphy, William Craft, and Warren Bowen, who are the parties prosecuting this appeal, filed their answer and petition in the case of Atkinson & Piersol *v.* William Beckett *et al.* They represent that they are beneficiaries of the third class of creditors secured by the said deed of trust from W. L. Jackson to G. S. Veach, trustee. They charge that all the debts of the first class have been paid off, but they are not informed if anything has been paid on the second class of debts. They allege that they are now the owners of the several debts secured to them respectively in said Jackson's deed of trust, and set out the respective amounts. They represent, further, that shortly subsequent to the date of said trust-deed to Veach, trustee, and, after the said trustee took charge of the property conveyed, he did, on the 16th day of November, 1882, convene most, if not all, the creditors secured in said trust-deed, and obtained their consent to a sale in bulk of the said stock of goods and merchandise mentioned in the trust to said William Beckett, and took his notes therefor, as set out in the bill, and hereinbefore described. They charge that the first two notes for four hundred and fifty dollars each have been paid off, but that the remaining six, amounting in the aggregate to four thousand six hundred forty nine dollars and twenty eight cents, remain totally unpaid by Beckett or anybody for him. They charge that the trust on the two hundred and twenty six acres securing these notes is valid and binding on the real estate conveyed to secure them, and pray to have the said land subjected to the satisfaction of said notes. They deny and disavow all knowledge in regard to sebsequent sales by Beckett to Miller, or Beckett to Veach, or that they have ever consented to any such arrangement, which tended to relieve Beckett of his liability to pay said notes. They represent that they were induced to consent to the sale of the goods in gross to Beckett by Veach, the trustee, solely on account of the character of the security offered by Beckett, and because

they believed it to be the best disposition of the goods, considering such security, that could be made, *etc.*

To this bill of Atkinson & Piersol, William Beckett files his answer and cross-bill, in which he recited the various circumstances hereinbefore related, whereby he supposed and maintained that Veach, the trustee, had, in effect, annulled and canceled the notes; and released the Tavenner deed of trust upon his two hundred and twenty six acres. Said Tavener, as trustee, having already advertised said farm under the trust, he prays for an injunction, which the court accordingly granted. He further prays that a receiver may be appointed to take charge of what may remain of said stock of goods, and sell the same, and hold the proceeds subject to the further order of the court; and in pursuance of this prayer such receiver was appointed.

Washington Smith likewise filed his answer, in the nature of a cross-bill, praying for cross-relief. He avers that Smith warranted that his three tracts of land exchanged by him contained, in the aggregate, about six hundred acres, and that, induced by this representation, he consented to make the exchange. That he has had the land surveyed, and that the survey shows a deficiency of one hundred and seven acres, which, at the rate of forty dollars per acre, shows a total loss of four thousand two hundred and eighty dollars, for which he claims to have reserved a lien in his deed to Beckett on said two hundred and twenty six acres, and asks to have the same enforced. To this cross-answer Beckett filed a special replication in which he denies generally and specifically every allegation and charge of the cross-answer, and thus makes up the issue.

The Circuit Court consolidated all these various causes, and referred them to a commissioner who should ascertain and report upon the various points in controversy between the parties. The commissioner reported that, as for the lien under the Tavenner trust, it had been discharged by the receipt of Veach, the trustee of said stock of goods, from Beckett, and their dealings in reference thereto as hereinbefore recited and detailed. As for the claim of Washington Smith, he reported that the exchange of lands was in gross, and not by the acre, and therefore Smith had no lien

for the supposed deficiency. Various exceptions were taken to this report by the proper parties, but the Circuit Court overruled them, and confirmed the report upon the points now in controversy, and raised this appeal. The final decree of the Circuit Court was entered on the 28th day of June, 1888.

In this decree, so far as the matters in controversy, and now before this Court, are concerned, the court decided that the lien under the Tavenner deed of trust had been fully paid off by said Beckett by the dealings and transactions hereinbefore recited; and, secondly, that Washington Smith had no claim or lien upon said farm for any deficiency in quantity. The court proceeded further to ascertain the judgment-liens upon said farm, and appointed commissioners to sell the same and bring the proceeds into court. From this decree and adjudication of the principles in the cause, Washington Smith files his cross-appeal, and, as we have seen, certain creditors and beneficiaries, under the Tavenner deed of trust, are prosecuting their appeal to this court.

The first question to be considered in this case involves the jurisdiction to entertain the appeal. It is urged by counsel in their brief that the fund now remaining to be distributed is so small that an apportionment giving to each of these appellants all they claim would reduce the shares of several of them below one hundred dollars, and that upon the principles heretofore established ·by this Court, and re-affirmed at the present term in the case of *Fleshman's Adm'r.* v. *Fleshman, supra* p. 342 this appeal ought not to be entertained. It is admitted, however, on all sides, that three of the seven petitioners each have debts involved sufficiently large for our jurisdiction to attach, and if the decree of which they complain be reversed and set aside, the action of this Court would inure to the benefit of all interested in the fund, whether they had appealed or not. *White* v. *Kennedy,* 23 W. Va. 222.

With reference to the relief sought by Washington Smith, counsel have argued that the appeal, so far as he is concerned, comes too late, because his cross-assignment of errors, and petition for a *certiorari* in this Court upon which

the supplemental record came up, were filed more than two years after the rendition of the final decree complained of. Our rule upon this subject is as follows: "In any appeal or writ of error, if error is perceived against the appellee or defendant in error, the Court will consider the whole record as being before it, and will reverse the proceedings, either in whole or in part, in the same manner as it would, were the appellee or defendant in error to assign error, and bring the case before the Court, unless such error be waived by the party prejudiced thereby, which waiver shall be considered as a release of all error committed against him. It is, however, advisable for the appellee or defendant in error, if he is of the opinion that there is error in the record to his prejudice, to call attention to the same by a formal counter-assignment of error, filed at the hearing of the case, or by pointing out and complaining of the same in his brief." It follows that upon the filing of their petition by the appellants within the statutory period the whole record was before this Court for consideration, and the defendant Smith was entitled to the benefit of the appeal.

Upon the merits but two questions arise upon the record which we shall deem it necessary to consider—*First.* Did the Circuit Court err in deciding that the lien of the trust-deed from William Beckett to L. N. Tavenner, dated November 16, 1882, had been totally discharged and satisfied by occurrences subsequent to its date, which amounted to a satisfaction and payment of the debts thereby secured? *Secondly.* Has Washington Smith any lien on account of a deficiency in the quantity of the land conveyed to him by William Beckett and wife?

We commence the consideration of the first question by observing that the powers and duties of a trustee are, in the main, governed, defined and limited by the instrument creating the trust. He is not the general agent of the creditors, but is the mutual agent of the grantor and the *cestui que trust,* bound to a compliance with the provisions of the deed, and in the manner of its execution, bound to look after and protect the interest of the grantor, and of all the beneficiaries.

In the present case the deed from W. L. Jackson to George S. Veach, trustee, defines the powers and duties of the latter as follows: "The party of the second part is hereby expressly authorized, requested, directed, and required, immediately upon the execution hereof, to take possession of the property, accounts, claims, notes, fixtures, and choses in action *etc.*, hereby conveyed, transferred, and assigned unto him, to proceed to collect said accounts, claims, notes, and choses in action, and to sell, for cash, stock of drygoods, groceries, caps, boots, shoes, hosiery, underwear, ready-made clothing, coats, vests, pants *etc.*, in said storeroom as fast as possible, at public or private sale, at auction, as he may deem more expedient, proper, and best suited to protect the interest of the parties hereby secured, and if on the 1st day of November, 1883, there remain any part thereof undisposed of, to sell the rest of the property so conveyed and assigned to him and then so undisposed of in the manner and upon the terms provided by the laws of the State of West Virginia concerning deeds of trust; and in order the more properly to do so to the advantage of all parties in interest, said party of the second part is authorized to employ such agents, attorneys, and clerks as he may see fit" *etc.*

Thus his duties and powers over the trust subject were well defined, and clearly limited. Meeting with an opportunity to sell the whole stock of goods in bulk he did not undertake to do so until the creditors, his *cestui que trust*, and Jackson, the grantor, had been convened, and gave their consent to a sale to the defendant William Beckett at the price of five thousand five hundred forty nine dollars and twenty eight cents, being, as it appears, just the aggregate amount of the debts secured. What now became the further duty of the trustee? This, likewise, is defined by the deed as follows: "Out of the proceeds of such sale he shall first pay off any and all costs attending the execution of this trust, including such clerk hire, attorney's fees, or for other services, and unto L. N. Tavenner the sum of—— dollars for drafting of this deed, and unto himself the commissions provided by law, and out of the residue thereof shall pay off and satisfy—*First*, the executions hereinbefore

specified according to order of priority of levies made by virtue thereof, and thereon now indorsed, unto the holders and owners thereof, or unto the officer holding the same for collection ; *secondly,* unto said R. G. Dovener, and Clarinda Jackson, and J. B. Neal, and H. M. H. Moss, the respective amounts and sums of money hereby secured to be paid unto them respectively, as hereinbefore set forth; and, *thirdly,* out of the residue of the proceeds of such collections and sales, if sufficient there be after all the aforesaid negotiable notes shall have become due and payable according to the tenor and effect thereof, he shall pay unto each of the holders and owners thereof, respectively, the sum of money thereby respectively evidenced, together with any and all interest and costs of protest thereon accrued, and if there be not sufficient proceeds to pay off and satisfy all of said negotiable notes in full, then the party of the second part shall pay unto the holders and owners thereof such *pro rata* share of such residue of proceeds as their, or her, or his note with interest and costs may be of the whole amount of said negotiable notes, with interest and costs as aforesaid; and any residue there may be after such payments shall pay over unto the party of the first part, his heirs or assigns; and in all things in the execution and construction of this trust the parties hereto shall act pursuant to and be governed by the laws of the State of West Virginia concerning, relating and controlling deeds of trust."

It seems, therefore, that the plain duty of Veach, the trustee, was now to collect the notes which Beckett had executed for the purchase-money of the goods, and apply the proceeds as the deed directed. If he went further than this it was without authority, and all who conspired with him or assisted him in cancelling or surrendering any of these notes, or in impairing the security whereby they were secured, would be equally bound with the trustee for all damages resulting from the breach of trust. *Cocke* v. *Minor,* 25 Gratt. 246 ; 1 Perry, Trusts, §§ 427, 429. It follows, therefore, that William Beckett could not relieve his land from the lien of the deed he gave to Tavenner, to secure the purchase-money of these goods, in any other manner than by paying the purchase-notes in money to the trustee as

they fell due. To say that he could, contrary to the terms of the deed of trust, pay these notes by combining with the trustee in speculating upon, trading, hawking, or peddling the very goods which he had purchased of such trustee, would be to close our eyes to the plainest principles of equity upon the subject of trusts, trust funds, and trust-estates. Those of the creditors under the William L. Jackson trust who may have undertaken to substitute themselves in place of Beckett as payers of these notes, would no doubt be estopped to pursue Beckett's land. But none of the parties prosecuting this appeal have done anything of the kind, nor, so far as the evidence discloses, have they ever assented to or in any manner participated in any such arrangement. We hold, therefore, that, as to them, the Circuit Court erred in deciding that the lien of the deed of trust to L. N. Tavenner as security for the payment of the said notes was released or in any manner impaired, and the decree of June 28, 1888, must be in that respect reversed and corrected for the benefit of those beneficiaries who have appealed, but not for the benefit of any of the beneficiaries who may be estopped in the manner above herein indicated.

We come now to consider the second and only other question involved in this appeal, viz., did the Circuit Court err in holding that Washington Smith has no lien on account of a deficiency in the quantity of the land conveyed to him by William Beckett and wife? It is difficult to understand how an exchange of lands by two owners can be said to be by the acre, unless, indeed, the respective tracts are described as being of equal area. Where they are described as containing different quantities, the natural presumption is that each owner accepts the newly-acquired property as of equal value with his own, and in full compensation therefor, and that the exchange is in gross, or *in solido,* without any reference to any specific pecuniary measure of value, either by the acre or otherwise. But conceding, as I think we must in this case, that the exchange was in gross, nevertheless, under the decisions of this court upon similar cases, there may be ground for compensation, arising out of mistake or misrepresentation.

If in a trade of farms between A. and B., A. should induce B. to enter into the contract by falsely misrepresenting the quantity in his farm, or any other material element of value entering into or pertaining to it, B. would certainly be entitled to compensation. See *Kelly* v. *Riley*, 22 W. Va. 247 ; *Depue* v. *Sergent*, 21 W. Va. 326 ; and *Sine* v. *Fox*, 33 W. Va. 525 (11 S. E. Rep. 218).

When we turn to the agreement which preceded the execution of the deeds by over two months, we find no valuation of any of the tracts exchanged, in money, except as to the Atwood tract, which seems to have been put at four hundred and fifty dollars, or a little less than ten dollars per acre. The lands which Beckett was to convey are described as containing in the aggregate about six hundred acres, comprising three tracts of land, one known as the "John Saton Tract," purchased by said Beckett of John Saton, and containing about one hundred and sixteen acres, and one tract known as the "Shuts Tract," purchased by said Beckett of Samuel Jumper, and containing about two hundred and twenty six acres, and one other tract known as the "James W. Mitchell Tract," containing about one hundred and seventy six acres, purchased by said Beckett of James W. Mitchell. But the said Beckett is to reserve from the Shuts tract twenty seven acres, the same belonging to the Humphrey heirs, and included in the boundaries of the Shuts tract.

There is here a singular incongruity in the quantity when stated in the aggregate and when apportioned among the three several tracts ; and when the land was actually surveyed, the quantity corresponded with neither statement in the agreement, that is to say, it was neither six hundred acres nor four hundred and sixty acres, but amounted in reality, after deducting the twenty seven acres mentioned in the agreement as being excluded, to five hundred four and one eighth acres. The only explanation which would render the agreement intelligible would be that it was supposed the re-survey would overrun the amounts named in the old deeds, and so it did by more than seventy acres.

The question, then, is narrowed down to one of fact—

did Beckett mean to warrant that there was six hundred acres in all, or merely that the amount should not fall short of four hundred and sixty? The agreement and deed taken together are ambiguous upon this point, and the oral testimony is in direct conflict, nor can we say that there is any preponderance in favor of either party. Anthony Smith, who testifies for his brother, Washington Smith, says that he calculated the quantity by adding up, on a shingle, the amounts called for by the deeds. This whole difficulty may have sprung from his defective arithmetical performance. Upon the whole, the question being narrowed down to one of fact, we can not say that the court below was plainly wrong in deciding that Smith was not entitled to claim anything on account of the alleged deficiency. He has been by no means diligent, but the reverse; although he received his deed on December 24, 1881, he did not have the land surveyed until the 18th of March, 1883, and then did not notify Beckett, nor did he ask for any relief until he filed his cross-bill on the 18th of October, 1883.

When the case goes back, two matters should not be overlooked—*First*, that the order of priority of judgment creditors in reference to attacking the fraudulent deed from William Beckett to William B. Beckett should be regarded, (*Claflin* v. *Foley*, 22 W. Va. 443); and *secondly*, that the rights of said William B. Beckett in any possible surplus should not be disregarded.

The decree appealed from is reversed so far as it relieves and discharges the said farm of two hundred and twenty six acres from the deed of trust to L. N. Tavenner of November 16, 1882; and in all other respects it is affirmed and the cause is remanded *etc.*

REVERSED IN PART.    REMANDED.