# CHARLESTON

WEES *v.* ELBON *et al.*

Submitted January 15, 1907. Decided February 26, 1907.

1. APPEAL—*Decisions Reviewable—Amount in Controversy—Aggregate Claims.*

   This Court has no jurisdiction to review the decree of a circuit court in a suit to enforce the payment of laborers', mechanics' or material-men's liens, where such liens are separate and distinct and arise out of separate and distinct contracts, either upon the petition of the owner of the property or of such lienors, except as to those liens decreed each of which exceeds the sum of $100. (p. 381.)

2. MECHANICS' LIENS—*Proceedings to Perfect.*

   Such liens are purely creatures of the statute, and every neces-

sary step prescribed in order to perfect such liens must be pursued in order to make them a charge against the property of the owner. (p. 385.)

3.   SAME—*Service of Account—Evidence.*

It is not necessary that such liens should show on the face of the record thereof in the clerk's office of the county court that such lienor has, within the thirty-five days prescribed by section 3 of chapter 75 of the Code, filed with the owner or his authorized agent a verified account thereof as prescribed by said section; but when such fact is put in issue by the pleadings, the burden of establishing the same by proper evidence is upon the one claiming the benefits of the lien, and his failure to thus establish such necessary fact will defeat the lien.    (p. 390.)

Appeal from Circuit Court, Randolph County.

Action by P. H. Wees against R. E. Elbon and others. From a decree in favor of defendants, plaintiff appeals.

*Reversed in part.    Remanded.*

W. B. MAXWELL, for appellant.

C. W. MAXWELL, for appellees.

MILLER, JUDGE:

The appellant, the owner of a certain lot in the city of Elkins and the house then recently constructed thereon, filed his bill in the circuit court against Mrs. R. E. Elbon, the principal contractor, and the several sub-contractors who had labored and furnished material for the construction of said house, and others, for the purpose, among other things, of enforcing the provisions of the building contract, and to have sold for the relief of his own property against the claims and liens of these sub-contractors certain mill buildings on adjoining lots and certain machinery therein, which by said contract the plaintiff had agreed to sell to Mrs. Elbon in consideration for the building of said house, the title to which mill buildings and machinery he had reserved to secure performance of said contract.   The bill of the plaintiff put in issue the sufficiency of the notices to him by these sub-contractors, and also otherwise contested the validity of their liens against his property.   Mrs. Elbon, the principal contractor, and all the sub-contractors except the W. C. Russell Lumber Company, answered the bill, asserting the validity of their several liens, exhibiting certified copies thereof, and

praying that their answers to the bill might be treated as a suit to enforce the same against the property of the plaintiff.

Besides these objects of the suit, the bill sought also to enforce the execution of a certain deed of trust dated September 11, 1901, executed by Mrs. R. E. Elbon and H. C. Elbon, her husband, to W. H. Cobb, trustee for C. W. Maxwell, covering five lots in the town of Huttonsville and a certain Ray & Egan Co. No. 4 planer, to secure the said Maxwell the payment of a' note for $435, which note and deed of trust the plaintiff had purchased from Maxwell prior to the institution of the suit, and which planer at the time of the contract with the plaintiff had been removed by Mrs. Elbon from Huttonsville into the said mill buildings at Elkins, and on which planer Mr. and Mrs. Elbon on the day of the contract executed to the appellant a deed of trust to secure him the payment of $250, damages stipulated in the contract for the non-compliance therewith. The bill also called for the execution of this last mentioned deed of trust. It is unnecessary upon this hearing to give a more detailed statement of the pleadings and proceedings in the cause.

On the filing of the answers on October 14, 1902, this cause, together with the case of the *Patapsco Oil and Grease Company* v. *R. E. Elbon*, was referred to a commissioner, who was directed to ascertain and report certain matters referred to him. The commissioner having made out and filed his report about the first day of May, 1903, the said causes were brought on on the 7th day of May, 1903, to be heard together, upon the papers and decrees and the report of the commissioner, with the exceptions thereto of the plaintiff and of the defendants A. McCauley, Lloyd Lantz, A. A. Talbott and L. C. Poling.

By his report the commissioner reported and allowed as liens upon the house and lot of the plaintiff the following claims: D. R. Martin, $12.02; A. L. Watkins, $16.64; Z. Kendall & Son, $16.41; R. M. Isner, $61.08; W. W. Steffey, $6.27; L. C. Wolf, $20.22; E. W. Blake, $7.05; W. C. Russell Lumber Company, $240.00; W. A. Bailey, $14.90—aggregating $394.59. But the commissioner rejected and refused to allow as liens on the house and lot of the plaintiff the claims of A. McCauley, $78.87, A. A. Talbott, $69.91,

L. C. Poling, $16.75, and Lloyd Lentz, $47.60—on the ground that Wees, prior to their doing any work or furnishing any material for said house, had notified them not to do so if they expected to look to him for their pay or to rely upon mechanics? liens upon his house. The report of the commissioner, among other things, also allowed to the plaintiff the sum of $250 damages for defects in the house built for him by Elbon, and that he also held the title to the buildings on the adjoining lots Nos. 97 and 98 and machinery therein until the $250 damages should be paid him.

The plaintiff excepted to that part of the commissioner's report which allowed to the W. C. Russell Lumber Company $240, because not proven, and also to that part of the report which allowed to the said R. M. Isner, Z. Kendall & Son and W. W. Steffey the sums reported in their favor. Messrs. Lantz, Poling, McCauley and Talbott excepted to that part of the report . of the commissioner which disallowed their claims as mechanics' liens upon the property of the plaintiff. There were no other exceptions to the report.

By the final decree appealed from the circuit court, in accordance with the report of the commissioner, decreed plaintiff the sum of $505.57 with interest, as a first lien upon the five lots in Huttonsville and the Ray & Egan Co. planer, etc., and also fixed other liens upon said lots in the order of priority reported by the commissioner, and further that there was due to the plaintiff the sum of $250 with interest as a first lien upon the machinery and buildings which the plaintiff contracted to sell to R. E. Elbon and a lien second in priority upon the Ray & Egan Co. No. 4 planer, to be paid out of the proceeds of the sale thereof. The court also decreed that there was due from R. E. Elbon to D. R. Martin and the other lienors whose liens were reported by the said commissioner, including the claim of the W. C. Russell Lumber Company, the several sums with interest as reported by the commissioner, and that said sums constituted mechanics' and material-men's liens upon the plaintiff's house and the lot upon which the same stood, but that, under the circumstances connected with the performance of the labor and providing material for said house, the court was of opinion that said lienors should first look to the machinery which the plaintiff contracted to sell R. E. Elbon before there should

be a sale of the house and lot, and accordingly adjudged, ordered and decreed that such liens should be paid without priority as between themselves, and third in the order of priority, out of the proceeds of sale of said sweepstakes planer, moulder, turning lathe and other machinery which the plaintiff contracted to sell to R. E. Elbon, and as a fourth lien in priority upon the Ray & Egan Co. planer No. 4; and as to the debts of said McCauley, Talbott, Poling and Lantz the court decreed that the same were not mechanics' or material-men's liens upon the house and lot of the plaintiff, but that equitably they should be paid the amounts due to them respectively out of the proceeds of the sale of the machinery gotten by Elbon from Wees in consideration of building said house, and that they should be paid the amounts due to them respectively before the mechanics' liens thereby decreed in favor of the parties who had no notice from the plaintiff that he would not be liable therefor; and that without priority as among themselves they should be paid *pro rata* out of the proceeds of the sale of said machinery after the debts thereinbefore decreed in favor of the plaintiff were fully paid; and the report of the said commissioner, as thus modified, was approved and confirmed. The plaintiff's exceptions were overruled, and the exceptions of the defendants sustained.

It will be observed that this decree does not specifically adjudge that the mechanics' and material-men's liens of D. R. Martin and others, or the equitable rights of the said McCauley, Talbott, Poling and Lantz, attached to the buildings which plaintiff contracted to sell to R. E. Elbon. By its terms, the decree applies these liens and claims only to the machinery located within said buildings; but we take it from the character of the decree that it was the intention to apply these liens and claims also to said buildings and that the effect of the decree is to do so, although negligently drawn to accomplish this purpose; for in that part of the decree directing sale of the property the special commissioner appointed is directed to sell said buildings and other machinery gotten from said Wees, each separately. If such be not the intention of the decree, when the cause goes back to the circuit court the decree should be so modified as to include said buildings.

The plaintiff has assigned as errors in the final decree, first, that the court erred in giving to McCauley, Talbott, Poling and Lantz priority over the debt of $250 decreed in his favor; second, that the court erred in overruling his exception to the report of the commissioner in reporting the debts of the W. C. Russell Lumber Company, Z. Kendall & Son, R. M. Isner and W. W. Steffey as liens upon his house and lot, upon the ground that the Russell Lumber Company debt and lien were not proven by competent legal evidence and that the said Kendall & Son, Isner and Steffey had been notified before doing any work upon the house that Elbon had been paid in full for constructing same; and there was a general assignment of error in the decree for allowing any of said mechanics' liens because of want of competent proof thereof, and because of want of notice to the plaintiff as required by law. The defendants McCauley, Talbott, Poling and Lantz have also assigned as error in the decree, that their claims were not allowed as liens upon the house and lot of the plaintiff Wees.

As to the first assignment of error, we do not interpret the decree of the circuit court as giving priority to McCauley, Talbott, Poling and Lantz over the debt decreed in favor of the plaintiff of $250. The decree is that these debts are to be paid *pro rata* out of the proceeds of the sale of machinery after the debts decreed in favor of the plaintiff have been fully paid. As we interpret the brief of the appellant, this point is abandoned.

Upon this appeal, there is presented for our consideration: first, the validity of the lien decreed in favor of the W. C. Russell Lumber Company; second, the validity of the liens decreed in favor of Kendall & Son, R. M. Isner and W. W. Steffey; third, the merits of the claims of Messrs. McCauley, Talbott, Poling and Lantz to the liens claimed by them respectively upon the house and lot of the plaintiff; fourth, the validity of each and all of the mechanics' and material-men's liens decreed against the house and lot of the appellant; fifth, the validity of the decree in favor of, and the rights of, said McCauley, Talbott, Poling and Lantz.

The first question which presents itself for our consideration is one of jurisdiction. It is clear that this Court has jurisdiction to determine the right of the W. C. Russell

Lumber Company to a lien for $240 decreed in its favor, for the amount in controversy is within the jurisdiction of this Court; but as to all of the other lienors, the sums claimed by said lienors and claimants respectively are each insufficient in amount to confer jurisdiction. This suit, it is true, has resolved itself practically into a suit to enforce mechanics' and laborers' liens under the provisions of chapter 75 of the Code. Section 11 of that chapter provides that a suit commenced by any person having such lien shall, for the purpose of preserving the same, enure to the benefit of all other persons having liens under said chapter on the same property. Nevertheless this statute recognizes the separate and distinct nature of the liens, and the nature of the contracts out of which such liens arise renders them separate and distinct causes of action, in like manner as judgments or other liens are recognized to be in the ordinary suits of judgment creditors. Section 7 of chapter 139 of Code, relating to suits to enforce judgment liens, provides that in every such suit all persons having liens on the real estate sought to be subjected by judgment or otherwise shall be made parties plaintiff or defendant; and the same section provides that if after commencement of such suit any lien-holder commence any other suit or proceeding in or out of court to enforce a lien claimed by him on the real estate or any part thereof of the judgment debtor under which a lien is sought to be enforced by such suit, the court, or the judge thereof in vacation, may enjoin him from so doing and require him to come in and assert his lien in such suit, or make such order or decree in relation thereto as to such court or judge may seem right and proper to protect the interests of all parties having such liens. So that it cannot be claimed any more in the first class of suits than in the latter that a suit to enforce the liens of laborers and mechanics is joint and not several as between the lienors and the defendant whose property is proceeded against. Will the jurisdiction of this Court, therefore, to hear and determine the appeal of the appellant as to the decree in favor of the W. C. Russell Lumber Company, draw with it jurisdiction to determine the other questions presented upon this appeal, either in favor of the appellant Wees or with respect to the cross-appeals of McCauley, Talbott, Poling and Lantz? We think not. Certainly we would not have jurisdiction to en-

tertain appeals by any one or more of the several lienors whose liens are less than $100; nor can either the appellant Wees or the contractor Elbon aggregate the several claims against them, or against their property, to bring them within the jurisdiction of this Court. This Court has heretofore in several cases denied its jurisdiction to entertain appeals by individual lienors or claimants to funds whose debts or distributive shares in such fund were each less than the jurisdictional amount. *Rymer* v. *Hawkins*, 18 W. Va. 309, 316; *Fleshman's Admr.* v. *Fleshman*, 34 W. Va. 342; *Aspinwall* v. *Barrickman*, 29 W. Va. 508; *Atkinson* v. *Beckett*, 34 W. Va. 584, 590; *Love* v. *Pickens*, 26 W. Va. 341, *Bee* v. *Burdette*, 23 W. Va. 744.

The same rule has obtained in Virginia. *Umbarger* v. *Watts*, 25 Grat. 167; *W. & S. R. R. Co.* v. *Colfelt*, 27 Grat. 777. But in the last case cited the supreme court of Virginia has ruled that in the case of a creditors' suit, where the judgment of one of the plaintiffs exceeded the jurisdictional amount while the judgments of other creditors were less, the court was rightfully in possession of the case upon the petition of the defendant company, because it was the aggregate of all the judgments of which it was aggrieved, and that the court therefore had jurisdiction to review the decision of the lower court and to reverse the decree, if found to be erroneous, as to all the judgments the aggregate of which the appellant had in controversy. This ruling of the court was thought by it not to be in conflict, but perfectly consistent, with *Umbarger* v. *Watts*, *supra*. In *Craig* v. *Williams*, 90 Va. 500, the court holds, apparently upon the authority of *Umbarger* v. *Watts*, *Railroad Co.* v. *Colfelt*, *supra*, and *Devries* v. *Johnson*, 27 Grat. 808, and *Gage* v. *Crockett*, *Id.* 735, that if several creditors are seeking by creditors' bill to subject property to their debts, no one of which amounts to as much as $500, although in the aggregate the sum is much greater, there can be no appeal on the creditors' part, because their claims are independent one of another; but the owner of the property when the total is as much as $500, although several of the claims be less, may appeal. And in the same connection this court holds that "where the interests are distinct and separate on the part of the appellants the decree may be reversed as to one, and dis-

missed as to another as having been improvidently awarded, because the subject of the controversy as to him is less than that amount ( *Cocke* v. *Minor*, 25 Grat. 260); but where the amount in controversy involved in the appeal is above the jurisdictional amount as to one of the appellants, the question is properly before this Court as to that one, and when the questions as to all others are identical and the claims have been consolidated and heard together the validity or invalidity of the appeal will affect them all and involve the validity of the decree as to all and in all respects." In the case of *Williams* v. *Hart*, 93 Va. 690, decided a little more than two years after the *Craig- Williams Case*, the Virginia court, upon a motion to dismiss by the appellees whose debts were less than $500, significantly says: "If this was a question of first impression in this court we would strongly incline to the opinion that their motion to dismiss should be sustained. In an ordinary creditors' suit, where the claims of the creditors are several and distinct and founded upon different contracts, it is clear that no creditor has the right of appeal unless his claim amounts to $500. If the matter in dispute as to the creditor be separate and distinct, it would seem to be separate and distinct also as to his adversary, the debtor, and there does not seem to be any good reason why he should be allowed to appeal as to that creditor unless the amount in controversy between them amounts to $500;" citing *Schwed* v. *Smith*, 106 U. S. 108. But the court felt bound by the decisions in *Railroad Co.* v. *Colfelt* and *Craig* v. *Williams*, *supra*.

We understand the decision of this Court by Judge Haymond in *Rymer* v. *Hawkins*, *supra*, page 319, to be a criticism of the rule laid down in *Railroad Co.* v. *Colfelt;* for Judge Haymond, referring to the ruling in that case, there says: "But see the opinion of the judge who delivered the opinion of the court." The real point decided in the case of *Railroad Co.* v. *Colfelt* we do not find has ever been decided by this Court. The cases of *Atkinson* v. *Beckett*, 34 W. Va. 584, 590, and *Wallace* v. *Leroy*, 57 W. Va. 264, belong to a different class of cases. In the *Atkinson-Beckett Case* the point was made that the fund remaining to be distributed was so small that an apportionment giving to each of the appellees all they claimed would reduce the shares of several of

them below $100, and that upon the principle of the *Fleshman Case, supra*, the appeal should not be entertained, but that, as three of the petitioners each had debts involved sufficiently large to give jurisdiction, the decree would enure to the benefit of all interested in the fund. But that is not the kind of a case we are now considering.

The decisions of the Supreme Court of the United States have been uniform from the beginning, in holding that "where several plaintiffs claim under the same title and the determination of the cause necessarily involves the validity of that title the court has jurisdiction, though the individual claims of none of them exceed the requisite sum; *but when the matters in dispute are separate and distinct, and are joined in one suit for convenience and economy, the case will be dismissed as to claims not exceeding $5000.*" *Davis* v. *Schwartz*, 155 U. S. 631, 647—citing *Schwed* v. *Smith*, 106 U. S. 188; *Hawley* v. *Fairbanks*, 108 U. S. 543; *Stewart* v. *Dunham*, 115 U. S. 61; *Estes* v. *Gunter*, 121 U. S. 183; *Gibson* v. *Shufeldt*, 122 U. S. 27; *Henderson* v. *Carbondale Coal &c. Co.*, 140 U. S. 25; *New Orleans Pacific Railway* v. *Parkers*, 143 U. S. 42; *Chapman* v. *Handley*, 151 U. S. 443. The case of *Gibson* v. *Shufeldt*, *supra*, was a suit in equity, brought by two or more persons on several distinct demands, and it was held that the defendant could appeal to that court as to those plaintiffs only to each of whom more than $5000 had been decreed; and, upon a motion to dismiss for want of jurisdiction, it was held that the court had no jurisdiction of the appeal by the defendants except as to those plaintiffs who had recovered more than $5000 each, and in the opinion of the court by Justice Gray it is said: "The question presented by this motion can hardly be considered an open one. But the subject has been so often misunderstood that the court has thought it convenient to review our former decisions and the grounds on which they rest." He then proceeds to review all the prior decisions of the court. We need do no more than refer to the report of that case for a discussion of the federal authorities and the reasons therefor. We especially refer to the reference made in the opinion by Justice Gray at page 39 to the cases of *Stewart* v. *Dunham*, and *Estes* v. *Gunter*, *supra*. Justice Gray says: "The true line of distinction as applied to cases like that now

before us is sharply brought out by the recent decisions of *Stewart* v. *Dunham*, 115 U. S. 61, and *Estes* v. *Gunter*, 121 U. S. 183, in each of which a preferred creditor for more than $5000 was on one side, and general creditors for less than $5000 each were on the other. In *Stewart* v. *Dunham*, the suit being brought by the general creditors against the debtor and the preferred creditor to whom the debtor had made the conveyance alleged to be fraudulent, and the latter seeking no affirmative relief, the matter in dispute as between the defendants and each of the plaintiffs was the amount of the claim of that plaintiff; but in *Estes* v. *Gunter*, the suit being brought by the preferred creditor against the trustee in the deed of assignment by which he was preferred, and the general creditors being summoned in as defendants, and themselves asking no affirmative relief, the matter in dispute was the value of the debt preferred and of the property assigned to secure the preference." The rule of these federal Supreme Court decisions has been adopted also by the United States Circuit Court of Appeals for this circuit in the case of *Putney* v. *Whitmeier*, opinion by Simonton, Circuit Judge, 66 F. R. 385. We prefer to follow the federal Supreme Court, as representing the better practice, and being more in consonance with our own decisions, rather than follow the decisions of the Supreme Court of Virginia. We therefore hold that, where the object of the suit is to enforce the payment of mechanics' liens of persons whose claims are several and distinct, an appeal will not lie to this Court from a decree of the circuit court adjudicating the same, either upon the petition of the lien claimants or of the owner of the property charged therewith, except as to such of them as may exceed the sum of $100.

The only question left open for our consideration, therefore, is the validity of the lien of the W. C. Russell Lumber Company. The bill filed by the appellant Wees in effect denied that legal notice of this lien, required by section 3, chapter 75, Code, had been served upon him. All of the other lienors except the W. C. Russell Lumber Company joined in an answer to the bill. H. C. Elbon, and one other witness perhaps, proved before the commissioner that the W. C. Russell Lumber Company had furnished material for the construction of the house for the plaintiff Wees, and a cer-

tified copy of the lien of the lumber company as recorded in the clerk's office of the county court of Randolph county was exhibited before the commissioner, but there was no attempt to prove notice thereof to the owner of the property as required by law. In case of each of the other lienors such notice was shown in evidence. The duty of serving or filing with the owner or his authorized agent an itemized account of the labor done or material or machinery furnished, verified by affidavit, within thirty-five days after the same is performed or furnished, is made mandatory by the statute, and the statute provides that neglect or failure to do so shall release the owner from all responsibility and his property from all liens for any item therein done or furnished prior to said thirty-five days. In a suit or proceeding to enforce a mechanic's lien, where the validity of the lien is put in issue by the pleadings, every material step necessary to have been taken to prove the lien must be supported by competent evidence. *Central City Brick Co.* v. *N. & W. Ry. Co.*, 44 W. Va. 286; *Niswander & Co.* v. *Black*, 50 W. Va. 188; *U. S. Blow Pipe Co.* v. *Spencer*, decided at the present term. In *Central City Brick Co.* v. *N. & W. Ry. Co.*, JUDGE ENGLISH says: "Thus it appears that a lien not only must be properly created, but where the lien is sought to be enforced proper allegations must be made and they must be sustained by proof; and the mere production of the claim sworn to and filed in the clerk's office, even if it complies with the statutory requirements sufficiently to constitute a lien on property for the construction of which the materials in the account filed were furnished, will not be sufficient to authorize a sale of the property under the decree of the court." The report of the commissioner, therefore, allowing the claim of the W. C. Russell Lumber Company as a lien against the property of the appellant Wees, was not founded upon sufficient evidence to support the same, and the exception of the appellant to the report of the commissioner should have been sustained and the claim disallowed.

The decree of the circuit court, therefore, entered in this cause on the 7th day of May, 1903, in so far as it overruled the exception of the plaintiff to the report of Commissioner W. E. Baker allowing the claim of the W. C. Russell Lumber Company for the sum of $240, and decreeing it to

be a lien upon the house built for the said P. H. Wees by the said R. E. Elbon, is reversed and annulled, and the appeal of the appellant and the cross-assignments of error by the said McCauley, Talbott, Poling and Lantz are in other respects dismissed as not being within the jurisdiction of this Court; and this cause is remanded to the circuit court to be therein further proceeded with according to the principles announced and directions given herein, and further according to the rules governing courts of equity.

And, the appellant substantially prevailing upon his appeal as against the W. C. Russell Lumber Company, it is ordered that he do recover against the said W. C. Russell Lumber Company his costs in this Court expended.

*Reversed in part. Remanded.*