SOUTHERN ERECTORS, INC.

*v.*

OLGA COAL CO., *et al.*

*and*

OLGA COAL CO.

*v.*

AMERICAN AIR FILTER CO., INC.

(No. 13479)

Decided March 9, 1976.

*Harry G. Camper, Jr., Wade T. Watson, Camper & Watson, William D. Lambert, Ogden, Robertson & Marshall,* for American Air Filter Co.

*Charles A. Tutwiler, Tutwiler, Crockett & LaCaria,* for Olga Coal Co.

*W. H. Ballard, II, Sterl F. Shinaberry, Hostler & Shinaberry,* for Southern Erectors.

PER CURIAM:

On this appeal, the Court is called upon to examine the rights and responsibilities of a contractor in an action brought by a subcontractor claiming a mechanic's lien against a property owner for improvements made to

the owner's property under a general or "turn-key" contract between the contractor and the owner.

During the period relevant to this litigation, the Olga Coal Company, a corporate defendant below, owned and operated a coal tipple at Caretta, McDowell County, West Virginia. The tipple was situated on land owned by Youngstown Mines Corporation, Interlake Steel Corporation and Steelco Coal Company, all of which, including Olga, were subsidiaries of Youngstown Sheet and Tube Company. In 1969 and 1970, Olga contracted with American Air Filter Company to construct a dust control system on the tipple located at Caretta. Subsequently, American Air Filter Company entered into a subcontract with Associated Craftsmen to provide some of the labor and materials on the improvements. In turn, Associated Craftsmen entered into an agreement of subcontract with Southern Erectors, Inc., by which Southern Erectors agreed to furnish labor and incidental materials for Associated Craftsmen in connection with the installation of the dust control system.

Southern Erectors performed its obligations completely under the terms of its contract and billed Associated Craftsmen for the work done. After making partial payment, Associated Craftsmen defaulted, leaving a balance due to Southern Erectors of $20,369.63. To secure its payment, on November 23, 1970, Southern Erectors contemporaneously served on Olga Coal Company and filed its notice of mechanic's lien upon Olga's interest in the coal tipple at Caretta and in the land upon which it was located.

Following the services and filing of its notice of mechanic's lien, Southern Erectors initiated a timely action in the Circuit Court of McDowell County against Olga Coal Company and Associated Craftsmen for enforcement of the mechanic's lien. After the initiation of the action, Olga sought and obtained leave to file a third-party complaint against American Air Filter Company. By its third-party complaint, Olga contended that American Air Filter Company, under its contract, had agreed

to indemnify and save harmless Olga Coal Company against any and all claims or demands that might be made against it by any subcontractor or others relating to the contract activities. In its answer to the third-party complaint, American conceded the existence of the contract with Olga but denied that the contract contained any hold harmless provision. In addition, American asserted a counter-claim against Olga for payment of $24,476.00 which Olga had retained under the terms of the contract between it and American.

After the preliminary proceedings described but before American Air Filter filed its answer to the third-party complaint, Southern Erectors filed a motion under Rule 56 of the Rules of Civil Procedure for summary judgment against Olga Coal Company. Although the motion sought judgment on the mechanic's lien only against Olga, notice of the motion was served upon counsel for American Air Filter Company as well. Several depositions, exhibits and affidavits were submitted to the court for its consideration in connection with the motion for summary judgment. On August 11, 1972, the Circuit Court below entered summary judgment, the particular terms of which are critical to the disposition of this case and are set out here:

> "It is, accordingly, ADJUDGED and ORDERED that the plaintiff, Southern Erectors, Inc., recover of and from the defendant, Olga Coal Company, the sum of Twenty Thousand Three Hundred Sixty-Nine & 63/100 Dollars ($20,369.63), with interest thereon. . . .

> "It is further ADJUDGED and ORDERED that upon said payment by said Olga Coal Company to said Southern Erectors, Inc., that the Mechanic's Lien filed by said plaintiff in said County Clerk's Office November 23, 1970, shall be satisfied, discharged, released and held for naught and that any amount owing by said Olga Coal Company to said American Air Filter Company shall be credited with the amount that Olga

Coal Company pays to the plaintiff, Southern Erectors, Inc., by virtue of this Order."

American Air Filter Company excepted and objected to all of the provisions of the court's order. Subsequently, American timely filed broad alternative motions under Rules 52 and 59 of the Rules of Civil Procedure, including a motion to alter or amend the judgments and findings and a motion to set aside those judgments and to grant a new hearing or trial. These motions were denied by the trial court below by an order entered December 5, 1972.

Although the appellant has designated numerous errors on this appeal, these can be condensed to two basic questions which this Court must examine: first, whether Southern Erectors had a valid and subsisting mechanic's lien which could be enforced against Olga Coal Company; and, second, whether Olga Coal Company ws entitled to a set-off in an amount equal to its liability to Southern Erectors against its obligation to American Air Filter.

I

Initially, we are confronted with a threshold question which must be resolved before reaching the merits of the challenge to the validity of the mechanic's lien in the action below. The appellee, Southern Erectors, contends that American Air Filter Company has no standing in this appeal to attack the judgment against Olga.

The appellee's argument ignores American's status as the third-party defendant below. During the entire proceedings before the trial court the defendant Olga maintained an essentially neutral position, contending primarily that it was simply a stakeholder which stood ready and willing to pay retained proceeds in accordance with the directions of the court. On the other hand, American, as third-party defendant, contested the validity of the mechanic's lien through its answer to the third-party complaint and by depositions, exhibits and

affidavits filed in opposition to the motion by Southern Erectors for summary judgment.

Rule 14(a), W. Va. R.C.P., provides in relevant part: "The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." The object of the language quoted is to permit the impleaded third-party defendant to protect itself in the instance of a failure or neglect by the defendant/third-party plaintiff to assert a proper defense to the plaintiff's action. Lugar & Silverstein, *W. Va. Rules*, 127–128 (1960). Under this rule, then, for the purposes of defending against the plaintiff's complaint, the third-party defendant is just as much an adverse party as is the defendant. *F & D Property Company v. Alkire*, 385 F.2d 97 (10th Cir. 1967). Thus, we conclude that where, as here, the liability of a third-party defendant derives directly from an adjudication against the defendant/third-party plaintiff, and where the third-party defendant has unsuccessfully asserted defenses available to the defendant/third-party plaintiff against the plaintiff, the third-party defendant has standing to appeal a judgment rendered against the defendant/third-party plaintiff on grounds raised by such defenses.

## II

The appellant challenges two aspects of the mechanic's lien which it contends render that lien invalid, or which at least raise such genuine issues of material fact as to preclude the entry of summary judgment.

Initially, American argues that the notice of mechanic's lien was not served upon the owner or his authorized agent within the time prescribed by law. *Code*, 38-2-2, gives a subcontractor a lienable claim upon the building or other structure improved by the labor and materials furnished by that subcontractor. Under *Code*, 38-2-7 and 38-2-9, for the purpose of perfecting and preserving his lien, every subcontractor must, within sixty days after the completion of his subcontract, give the

owner or his authorized agent notice of lien. We have held that compliance with the notice requirement is essential to the perfection of a mechanic's lien under *W. Va. Code*, 38-2-2. *Wees v. Elbon,* 61 W. Va. 380, 56 S.E. 611 (1907).

From the record, there is no dispute that the notice in question was served on Olga Coal Company on November 23, 1970. However, a factual dispute arises over the date on which the subcontractor completed the work under his subcontract. Agents of Southern Erectors testified, by deposition, that the last work was performed on September 25, 1970. On the other hand, exhibits filed with the depositions indicate that the last date for which Southern Erectors billed its contractor for work was September 22, 1970. We have examined the record in detail and although we find that the evidence preponderates in favor of the appellee's position that the last performance of work occurred on September 25, 1970, such a showing is inadequate to sustain a motion for summary judgment under Rule 56. *See, Wheeling Kitchen Equipment Co., Inc. v. R & R Sewing Center, Inc.*, 154 W. Va. 715, 179 S.E.2d 587 (1971). However, this determination by the Court does not negate the judgment below, since the appellee asserts other grounds which we conclude sustain the trial court's action.

*Code,* 38-2-31, as amended, another section of the mechanic's lien article, provides in part:

> "Every workman, laborer or other *person* who shall do or perform any work or labor, *for an incorporated company* doing business in this State, by virtue of a contract either directly with such incorporated company or with its general contractor, *or with any subcontractor,* shall have a lien for the value of such work or labor upon all real estate and personal property of such company ...." (Emphasis supplied.)

This lien may be perfected by filing the notice of lien with the clerk of the county court of the county in which

the work or labor was performed *within ninety days* from the time such person shall have ceased work or labor. *Code*, 38-2-32. No notice to the owner is required to effect a perfection of this workman's lien. *Doss v. Gulf Smokeless Coal Co.*, 102 W. Va. 470, 135 S.E. 575 (1926); *O'Connell v. Little War Creek Coal Co.*, 95 W. Va. 685, 122 S.E. 158 (1924). So, even if the last work was performed on September 22, 1970, as is contended by the appellant, it is clear that notice was filed timely, *i.e.*, within the ninety day period, on November 23, 1970. We conclude that the circuit court properly found that the notice of lien was filed seasonably.

The appellant's second attack on the mechanic's lien is that it was served on Olga Coal Company, who, as lessee, was not the owner of the land on which the tipple was located. The essence of this argument is that since the notice of lien was directed to Olga Coal Company, it was ineffective to secure a lien since the property, in actuality, was owned by Youngstown Mines Corporation, Interlake Steel Corporation and Steelco Coal Company. In taking this position, the appellant has neglected to recognize that *Code*, 38-2-32, unlike *Code*, 38-2-9, requires no notice to be given to the owner of the real estate or personal property upon which the lien is sought to be imposed. Further, it is absolutely clear that Olga, in its own right, was the owner of sufficient property in the form of the tipple and the leasehold upon which it was located to give rise to a lienable interest in favor of Southern Erectors. *Showalter v. Lowndes*, 56 W. Va. 462, 49 S.E. 448 (1904).

On the foregoing analysis, the Court is of the opinion that the trial court below properly granted summary judgment for Southern Erectors against Olga Coal Company.

### III

Throughout its presentation to this Court, by briefs and oral argument, the appellant has characterized the action of the circuit court below as a grant of summary

judgment against American in favor of and on the motion of Southern Erectors. We have carefully examined the record in this case with particular reference to the judgment order of August 11, 1972. Based on this examination, we think it is clear that when the circuit court ruled, "that any amount owing by said Olga Coal Company to said American Air Filter Company shall be credited with the amount that Olga Coal Company pays to the plaintiff, Southern Erectors, Inc., by virtue of this order," the circuit court, albeit inartfully done, granted summary judgment for Olga Coal Company on its third-party complaint against American Air Filter. This construction raises a substantial question as to the propriety of the court's action below inasmuch as Olga had made no motion for summary judgment.

Rule 56(c), W. Va. R.C.P., provides in part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the *moving party* is entitled to a judgment as a matter of law." (Emphasis supplied.) Although the rule appears to authorize the court to grant summary judgment only to a party who has made a formal motion, the authorities agree that a court may enter judgment for a party opposing a summary judgment motion even though no cross-motion has been made. *Lowenschuss v. Kane,* 520 F.2d 255 (2nd Cir. 1975); *Local 33, Int'l Hod Carriers, etc. v. Mason Tenders, etc.,* 291 F.2d 496 (2nd Cir. 1961); Lugar & Silverstein, *W. Va. Rules* 436 (1960); 10 Wright & Miller, *Federal Practice and Procedure:* Civil §§2719 & 2720 (1973). Arguably, a different situation obtains where neither party has moved under Rule 56 and the court wishes to act on its own initiative. We are of the opinion that where a court acts with great caution, assuring itself that the parties to be bound by its judgment have had an adequate opportunity to develop all of the probative facts which relate to their respective claims, the court may grant summary judgment *sua sponte. Sibley Memorial Hospital v. Wilson,* 488 F.2d 1338 (D.C. Cir. 1973); *Wirtz v.*

*Young Electric Sign Co.*, 315 F.2d 326 (10th Cir. 1963). *See*, 10 Wright & Miller, *Federal Practice and Procedure: Civil* §2719 (1973). *Contra, Twin City Federal S & L Assn. v. Transamerica Ins. Co.*, 491 F.2d 1122 (8th Cir. 1974).

In the proceedings below, the obligation claimed by Olga against American derived solely out of the parties' contract which was made a part of the record. Further, Olga admitted by its answer to American's counterclaim that it had retained ten percent of the contract price due. On this set of circumstances, the court had before it all that was necessary to adjudicate the rights of the parties. Consequently we cannot conclude that the circuit court erred in treating the matters before it as ripe for judgment.

IV

The final issue to be resolved is whether the circuit court erred in giving judgment to Olga on its third-party complaint against American. The thrust of Olga's cause of action against American was that under its contract American "agreed to indemnify and save harmless Olga Coal Company against any and all claims or demands that might be made against it by any sub-contractor or others arising out of the principal contract."

The agreement between the parties is contained in a series of documents, consisting primarily of a proposal or "quotation" by American Air Filter Company, and a "purchase order" from Olga Coal Company. These documents, when read in *pari materia*, provide a clear picture of the obligations of the respective parties. As it is relevant to our consideration, the most apparent feature of the agreement is that American Air Filter Company promised to provide all work and material required for the installation of the improvements for pollution abatement at a price of $244,760.00. In its proposal, American stated "AAF will provide at our expense, all labor and materials as required to meet the stated guarantee [a guarantee of qualitative performance by the pollution abatement installation]. This is to be done at no expense

to Olga Coal Company or Youngstown Sheet & Tube." American further promised: "Except for the event of a general industry wide increase in steel prices, the prices quoted are *firm prices* upon acceptance of this proposal ...." (Emphasis supplied.) In accepting the proposal by American at the firm price, Olga specified that American was to "Furnish all engineering, equipment, tools, materials, supplies, foundations, labor, and supervision to unload, install and complete the facilities." Further, the purchase order required American "to provide at no expense ... all engineering, labor and materials or other work which may be necessary ...." Finally, Olga stipulated that American "shall have sole responsibility ... for workmanship and materials ... [and] ... any extra costs are at the full responsibility of the contractor ...." It is in accordance with these terms that American proceeded to provide the specified improvements and in connection therewith obtained, by subcontract, the services of others in pursuance of its performance.

It is elementary that where a contractor obligates itself to furnish labor and materials, and in the absence of particular language in the contract making the owner responsible for payment for these labor and materials, the compensation of laborers and materialmen must be borne by such contractor and not by the owner. *Carruth v. Valley Ready-Mix Concrete Co.*, 221 S.W.2d 584 (Tex. Civ. App. 1949); 17A C.J.S. *Contracts* §370(2). Such obligations are the very essence of the contract. Similarly, an owner is entitled to a set-off against any obligation he may have to his contractor for any expenses incurred or damages sustained by reason of his contractor's failure to perform in accordance with his contract. *H.T.C. Corporation v. Olds*, 486 P.2d 463 (Colo. App. 1971); 17A C.J.S. *Contracts* §368. Based on these principles, the court concludes that where a contractor agrees to provide all work and materials in connection with a contract at a specified and firm price, and in the absence of any express contractual agreement to the contrary, the contractor is responsible to the owner for any costs sus-

tained by the owner which are occasioned by the acts of the contractor's irresponsible subcontractor. In this case, American unequivocally promised to provide a specified improvement at a specified price and expressly agreed to absorb extra costs. Under these circumstances, we believe that it was perfectly appropriate for the trial court to grant judgment in favor of and on behalf of Olga by way of a set-off against its contractual obligation to American.

The judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*