# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Carol Drake Greco and Bette Drake Walling,**
**Plaintiffs Below, Petitioners**

**FILED**

**February 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0124** (Pendleton County 15-C-32)

**George I. Sponaugle, II,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioners Carole Drake Greco and Betty Drake Walling, by counsel Scott Curnutte, appeal the January 12, 2017, order that granted summary judgment in favor of respondent. Respondent George Sponaugle, by counsel Jerry D. Moore and Jared T. Moore, filed a response and cross-assignment of error regarding the order's dismissal of respondent's counterclaim. Petitioners filed a reply brief.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

George and Ruth Drake were married on December 18, 1948, and the marriage did not produce any children. On May 30, 2000, Respondent Sponaugle, an attorney and Ruth Drake's nephew, prepared wills for George and Ruth Drake. The wills left the bulk of the estate to the surviving spouse, and if not survived by each other, the estate was to be divided equally amongst the Drake's six heirs. George Drake's heirs by consanguinity are Petitioners Carole Drake Greco and Bette Drake Walling. Respondent is Ruth Drake's heir by consanguinity.[1]  George Drake executed his will on May 30, 2000, and passed away on April 10, 2002. He was survived by his wife, Ruth.

In 2009, Ruth Drake executed a will drafted by respondent at his law office. The 2009 will was significantly different from the 2000 will executed by George Drake, as it bequest the majority of the million dollar estate to Respondent Sponaugle, and bequeathed only $125,000 to petitioners. Ruth Drake died on December 31, 2014. Respondent Sponaugle, qualified as the executor of the estate, and presented the will executed by Ruth Drake in 2009 for administration.

---

[1] The remaining three heirs are notice parties to this action.

1

Subsequently, Petitioners Greco and Walling inquired of respondent if he had knowledge of a will prepared and executed in 2000 by Ruth Drake. Respondent advised that he checked his computers, but could not find a prior will. After this communication, petitioners filed the underlying suit against respondent alleging that there was a common understanding between Ruth and George to execute mutual wills, and that Ruth Drake benefitted from that agreement when she received George Drake's estate upon his death, and that she breached that agreement when she executed her 2009 will.

In April of 2016, respondent moved for summary judgment and argued that petitioners could not produce Ruth Drake's executed 2000 will, and that the parties could not meet their burden to prove the existence of an earlier will. Petitioners responded that summary judgment prior to discovery was inappropriate. The circuit court agreed to hold respondent's motion in abeyance.

Thereafter, respondent, in response to discovery requests, executed an affidavit wherein he averred that he was unaware that Ruth Drake executed a will on May 30, 2000, and that he did not have a copy of such a will. Respondent further averred that he had "attempted to locate the [executed] last will and testament of Ruth Drake," but was unable to do so.

On September 14, 2016, petitioners' counsel called the entity responsible for computer administration at respondent's law office, and requested that it search for any will prepared for Ruth Drake. The computer administrator located a file which reportedly contained a draft of a will for Ruth Drake. This draft was prepared at the same time as George Drake's draft in 2000. Respondent never previously disclosed the existence of the draft will. As a result, petitioners submitted a report to the court, detailing their efforts to retrieve the draft of the will, and respondent's noncompliance. In response, respondent filed a clarification asserting that the files were newly discovered evidence, and that respondent had provided petitioner with the requested files.

The circuit court reviewed the parties' motions and by order entered January 12, 2017, granted respondent's motion for summary judgment, finding that petitioners could not establish that Ruth Drake executed the May 30, 2000, will, or that the Drake's wills were mutual. The circuit court also dismissed a counterclaim filed by respondent, seeking to invoke the *in terrorem*[2] clause in the will. Petitioners now appeal the order of the circuit court that dismissed

---

[2] Pursuant to the *in terrorem* clause,

Every heir, legatee, devisee, beneficiary, or the spouses of any heir, legatee, devisee or beneficiary, under this Will, who shall contest in any court any provision of this instrument, or cause any trouble or disturbance in the settlement of my estate, shall not be entitled to any devises, legacies or benefits under this Will or any Codicil hereto, or any trust created hereby, and any and all devises, legacies and portions of the income or corpus of my estate, otherwise provided to be paid to such person shall lapse and shall be paid, distributed, and passed to the remaining beneficiaries under Article III of this my Last Will and Testament. My

(continued . . .)

their complaint and respondent appeals the dismissal of his counterclaim.

Requesting that this Court overturn the order of the circuit court granting respondent summary judgment, petitioners assert that the circuit court erred as a genuine issue of material fact existed regarding whether the original wills were mutual wills. Conversely, respondent argues in his cross-appeal that the circuit court erred in dismissing his claim sua sponte, because petitioners had not previously moved for dismissal of respondent's claim. We note that, "a circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). After careful consideration of the record we find that the circuit court did not err in dismissing the parties' complaints and respective counterclaim.

Petitioners argue that there is a genuine issue of material fact regarding whether Ruth and George Drake executed mutual wills on May 30, 2000. Petitioners point to the word-processor version of Ruth Drake's May 30, 2000, will located on respondent's office computer system, which is a mirror image of George Drake's will, and asserts that such is evidence of an agreement between the testators to make mutual wills. Petitioners argue further that additional circumstances exist that give a clear implication that the wills were made pursuant to a common understanding. We have long held that, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. Pt. 3, *id*. Here, the circuit court found that the petitioners failed to meet the threshold test regarding mutual wills, as they could produce no affirmative evidence to establish that the wills were mutual in nature. In the absence of such evidence, the circuit court held there was no genuine issue of material fact regarding the existence of mutual wills. We agree, and find no reversible error.

In his cross-appeal, respondent argues that the circuit court erred in granting summary judgment in favor of petitioners. Respondent argues that because petitioners did not make any motions regarding the counterclaim, that the circuit court did not have the authority to dismiss the claim without giving respondent reasonable notice and an opportunity to address the grounds for which relief was sought. We disagree. It is clear from our review of the record that the circuit court had sufficient information to determine there was no genuine issue for trial. It is well established "that a summary judgment may be rendered against the party moving for judgment and in favor of the opposing party even though the opposing party has made no motion for summary judgment." *Gastar Exploration Inc. v. Rine*, 239 W. Va. 792, ___, 806 S.E.2d 448, 454 (2017). Indeed, this Court has held that, "[w]here a court acts with great caution, assuring itself that the parties to be bound by its judgment have had an adequate opportunity to develop all of the probative facts which relate to their respective claims, the court may grant summary judgment under Rule 56, W.Va. R.C.P., *sua sponte*." Syl. Pt. 4, *S. Erectors, Inc. v. Olga Coal Co.*, 159 W. Va. 385, 223 S.E.2d 46 (1976). Consequently, we find no error.

The circuit court's order reflects its thorough analysis of the grounds raised in the

hereinafter named Executor is specifically authorized to defend, at the expense of my estate, any contest or attack of any nature upon this Will or any Codicil hereto, or upon any paragraph or provision hereof.

petitions before this court. Having reviewed the opinion order entered on January 12, 2017, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to all the assignments of error raised in this appeal. The clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 9, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

IN THE CIRCUIT COURT OF PENDLETON COUNTY, WEST VIRGINIA
DIVISION I

CAROLE DRAKE GRECO and
BETTE DRAKE WALLING,
   Plaintiffs,

vs.
           CASE NO.: 15-C-32
           Honorable H. Charles Carl, III

GEORGE I. SPONAUGLE, II,
Individually and as Executor,
THE ESTATE OF RUTH H. DRAKE,
KATHY M. SPONAUGLE,
BERRY JO CALIGUIRE,
JIM HARPER SPONAUGLE,
PATRICIA BERGSLAND,
ELIZABETH MOCK,
JAMES B. HARPER,
ERIN BLANKENSHIP,
KELLY SARNO,
BROOKE BLANKENSHIP,
EMILY BLANKENSHIP,
WILLIAM HARTFIELD,
ISAAC SPONAUGLE,
C.J. WARNER, and
WILLIAM HARTFIELD,

   Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ORDER DISMISSING DEFENDANTS' COUNTERCLAIM

On April 27, 2016, Jerry D. Moore and Jared T. Moore, counsel for Defendants George I. Sponaugle, II and The Estate of Ruth H. Drake, filed a *Motion for Summary Judgment*. On May 16, 2016, Scott Curnutte, counsel for Plaintiffs, filed a *Response to Motion for Summary Judgment*. A hearing was held on Defendants' *Motion for Summary Judgment* on May 17, 2016, at which time the Court heard arguments from the parties. The Court deferred its ruling and directed the parties to submit proposed orders within 10 days. Mr. Moore submitted a proposed order on May 26, 2016, and Mr. Curnutte submitted a proposed order on June 2, 2016.

1

By Order dated June 14, 2016, the Court held in abeyance its ruling on Defendants' *Motion for Summary Judgment* to allow the Plaintiffs additional time to conduct discovery. However, the Court cautioned the Plaintiffs that it may rule on the *Motion for Summary Judgment* at the August 18, 2016 hearing. A status hearing was held on August 18, 2016, at which time the Plaintiffs expressed a desire to depose Mr. Sponaugle and speak with Sponaugle & Sponaugle's computer expert. By Order dated August 22, 2106, the Court modified the previously entered *Agreed Scheduling Order* and directed Mr. Curnutte to report to the Court by September 30, 2016 regarding whether any additional evidence was located regarding the existence of a May 30, 2000 Will of Ruth H. Drake and the existence of an agreement between the Drakes to create mutual and reciprocal wills.

On September 15, 2016, Mr. Curnutte submitted an *Initial Report to the Court* following the September 15, 2016 depositions. Mr. Moore filed *Defendant George I. Sponaugle, II's Clarification in Response to Plaintiffs' Initial Report to the Court* on September 22, 2016. On October 7, 2016, Mr. Moore submitted a revised proposed Order. On the November 29, 2016, Mr. Moore submitted a copy of the deposition transcript of Linda Rexrode, along with another revised proposed Order. On December 6, 2016, Mr. Curnutte submitted a *Supplemental Response to Motion for Summary Judgement.*

On December 20, 2016, a Pretrial Hearing was held, and the Court again heard arguments regarding the Defendants' *Motion for Summary Judgement*. The Court directed the parties to submit proposed orders within 10 days. Mr. Moore submitted a revised proposed Order on December 28, 2016, and Mr. Curnutte submitted a proposed Order on January 5, 2017.

The Court has read and considered the pleadings, the entire record in this case, specifically including *Defendants' Motion for Summary Judgment, Plaintiffs' Response to*

*Motion for Summary Judgment, Defendants' Reply to Plaintiffs' Response to Motion for Summary Judgment, Plaintiffs' Initial Report to the Court, Defendant George I. Sponaugle, II's Clarification in Response to Plaintiffs' Initial Report to the Court, Plaintiffs' Supplemental Response to Motion for Summary Judgment,* as well as the arguments of counsel. Upon mature consideration of all of which, the Court hereby GRANTS *Defendants' Motion for Summary Judgment.* In support of its decision, the Court makes the following findings of fact and conclusions of law.

## Standard of Review

1. The West Virginia Supreme Court of Appeals has explained that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

2. "Rule 56 of the West Virginia Rules of Civil Procedure plays an important role in litigation in this State[:] It is designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial, if there essentially is no real dispute as to salient facts or if it only involves a question of law." *Williams v. Precision Coil, Inc.,* 194 W. Va. 52, 58, 459 S.E.2d 329, 335 (1995) (internal quotations and citations omitted).

3. Once a motion for summary judgment is made, "the nonmoving party must take the initiative and by affirmative evidence demonstrate that a genuine issue of fact exists." *Williams,* 194 W. Va. at 58, 459 S.E.2d at 335. Otherwise, Rule 56(e) empowers a circuit court to grant the pretrial motion.

4. "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence,' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. *Painter v. Peavy*, 192 W. Va. 189, 192-93, 451 S.E.2d 755, 758-59 (1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

5. "While the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless offer some concrete evidence from which a reasonable ... [finder of fact] could return a verdict in ... [its] favor or other significant probative evidence tending to support the complaint." *Williams*, 194 W. Va. at 59-60, 459 S.E.2d at 336-37 (internal quotations and citations omitted).

## Findings of Fact and Conclusions of Law

6. Plaintiffs' Complaint alleges that the Last Will and Testament of Ruth H. Drake executed on February 23, 2009 is invalid based upon the execution of a previous irrevocable will.

7. Plaintiffs allege that both Ruth H. Drake and her husband, George W. Drake, executed mutual and reciprocal wills on May 30, 2000. *Complaint* at ¶ 11.

8. George W. Drake died on April 10, 2002, and his Will was admitted to probate in the County Commission of Pendleton County on April 16, 2002. *Complaint* at ¶¶ 14, 15.

9. The Complaint alleges that Ruth H. Drake executed a subsequent Will on February 23, 2009. *Complaint* at ¶ 17. The fact that Ruth H. Drake executed a Will on February 23, 2009 is not disputed by the Defendants.

4

10. This case presents the narrow issue of whether Plaintiffs can proffer any affirmative evidence to show that George W. Drake and Ruth H. Drake executed mutual and reciprocal Wills on May 30, 2000 based upon a contractual arrangement.

11. "Mutual wills are the separate wills of two persons which are reciprocal in provisions." *In re Reed's Estate*, 125 W. Va. 555, 26 S.E.2d 222, 224 (1943) (citations omitted). Mutual wills are "executed pursuant to an agreement between the testators to dispose of their property in a particular manner, each in consideration of the other." *Davis v. KB & T Co.*, 172 W. Va. 546, 550, 309 S.E.2d 45, 48 (1983) (citing 79 Am.Jur.2d, *Wills*, § 754 (1975)).

12. Reciprocal wills are "evidence of an agreement between the testators to make mutual Wills." *Davis*, 309 S.E 2d at 48 (*citing Turner v. Theiss*, 38 S.E.2d 369 (W.Va. 1946); *In re: Reed's Estate*, 26 S.E.2d 222 (W.Va. 1943); *Wilson v. Starbuck*, 182 S.E. 539 (W.Va. 1935); *Underwood v. Myer*, 146 S.E. 896 (W.Va. 1929)).

13. Years ago, West Virginia recognized that the execution of mutual wills based upon a common understanding makes the two separate wills a joint will and irrevocable upon the death of the first testator. See *Underwood v. Myer*, 107 W. Va. 57, 146 S.E. 896 (1929).

14. To proceed on their claim, Plaintiffs must first demonstrate that Ruth H. Drake executed a Will on May 30, 2000.

15. Both Plaintiffs concede that they do not have, and have never viewed a May 30, 2000 Will of Ruth H. Drake. *Plaintiff Carole Drake Greco's Response to Defendant's First Discovery Requests* at Interrogatory No. 23 and Request for Admission Nos. 1 & 2; *Plaintiff Bette Drake Walling's Response to Defendant's First Discovery Requests* at Interrogatory No. 23 and Request for Admission Nos. 1 & 2 (collectively referred to as *Plaintiffs' Responses to Defendant's First Set of Discovery*).

16. Neither Plaintiff has any photograph or visual depiction of an executed or unexecuted copy of a May 30, 2000 Will of Ruth H. Drake. *Plaintiffs' Responses to Defendant's First Set of Discovery*, at Request for Production No. 5.

17. The Plaintiffs can identify no statement from either George W. Drake or Ruth H. Drake to imply that Ruth H. Drake executed a Will on May 30, 2000. *Plaintiffs' Responses to Defendant's First Set of Discovery*, at Interrogatory Nos. 13 & 14.

18. George I. Sponaugle, II is unaware whether Ruth H. Drake executed a Will on May 30, 2000. *Affidavit of George I. Sponaugle, II* at ¶¶ 6-7. Mr. Sponaugle made reasonable efforts to locate a May 30, 2000 Will of Ruth H. Drake, but those attempts were unsuccessful. *Id.* at ¶¶ 11-12. Later, a computer file containing an unexecuted draft of a May 30, 2000 Last Will and Testament of Ruth H. Drake was found as set forth below.

19. Following depositions of George I. Sponaugle, II, Kathy Sponaugle, and George Isaac Sponaugle, III on September 15, 2016, Mr. Curnutte advised the Defendants that he had reason to believe five (5) documents were currently located on Sponaugle & Sponaugle's computer system relating to a Will of Ruth H. Drake. This was based upon a conversation that Mr. Curnutte had with Marty Shifflett of Form Networks, the computer administrator for Sponaugle & Sponaugle, the previous day, wherein a remote search was conducted of Sponaugle & Sponaugle's computer server at the request of Mr. Curnutte.

20. On September 16, 2016, the Defendants provided Plaintiffs with the following documents: Drake, Ruth - Will 5-30-00.wpd; Drake, Ruth - Will 6-24-02(00001).wpd; Drake, Ruth - Will 6-24-02.wpd; Drake, Ruth H - Living Will.wpd; Drake, George - Will 5-30-00.wpd.

21. Critical to this case is the document titled Drake, Ruth - Will 5-30-00.wpd, which purports to be a draft of a May 30, 2000 Last Will and Testament of Ruth H. Drake. The

6

unexecuted draft of the document titled Drake, Ruth - Will 5-30-00.wpd contains reciprocal provisions to the executed May 30, 2000 Last Will and Testament of George W. Drake. No executed version of this document, either original or copy, has been produced by a party.

22. The document is an unexecuted draft of a May 30, 2000 Last Will and Testament of Ruth H. Drake that may or may not have been executed. The Plaintiffs have not produced an original or a copy of an executed May 30, 2000 Last Will and Testament of Ruth H. Drake.

23. The Court is bound by the holding that "[t]he proponent of a lost or missing instrument must prove its existence and contents with clear and conclusive evidence." Syl. Pt. 2, *Estate of Bossio v. Bossio*, 237 W. Va. 130, 785 S.E.2d 836 (2016).

24. The Plaintiffs deposed Linda Rexrode, an attesting witness to the execution of George W. Drake's Will on May 30, 2000, who had no knowledge about whether Ruth H. Drake was present during the execution of George W. Drake's Will on May 30, 2000. Linda Rexrode further testified that she does not remember witnessing the execution of any Will for Ruth H. Drake.

25. Attorney Marla Zelene Harman personally met with Ruth H. Drake on February 23, 2009, to discuss the legal consequences of her Last Will and Testament dated February 23, 2009. *Affidavit of Marla Zelene Harman* at ¶ 2. Ruth H. Drake did not advise Ms. Harman that she executed a Last Will and Testament dated May 30, 2000, did not advise Ms. Harman that she intended to execute a mutual will with George W. Drake, and did not advise Ms. Harman that she had any contract, agreement, or common understanding with George W. Drake regarding the execution of wills. *Id.* at ¶¶ 4, 6, 7.

26. The Plaintiffs have produced no affirmative evidence to show that Ruth H. Drake actually executed a will on May 30, 2000. Equally, the Plaintiffs cannot show that Ruth H.

Drake was present when George W. Drake executed his Last Will and Testament on May 30, 2000.

27.    Therefore, the Court concludes that Plaintiffs have failed to meet their burden of proving Ruth H. Drake executed a Will that would be mutual and reciprocal to George W. Drake's Will. The Court finds that Plaintiffs have failed to meet the threshold test regarding mutual wills, which is the execution of such a will, and that the Court's analysis regarding summary judgment could end at this point.

28.    However, in viewing all facts in the light most favorable to Plaintiffs, the Court has assumed, *arguendo*, for purposes of further analysis below, that Plaintiffs have proven Ruth H. Drake executed a Will that is mutual and reciprocal to George W. Drake's Will. In other words, the Court has further considered, infra, whether or not the Plaintiffs can produce affirmative evidence illustrating a clear implication of a contractual arrangement between George W. Drake and Ruth H. Drake to execute mutual, reciprocal, and irrevocable wills.

29.    "This Court has previously held that the existence of reciprocal provisions, by which each spouse devises and bequeaths his or her estate to the other, is not, in and of itself, sufficient to establish an agreement by them to execute mutual wills." *Davis v. KB & T Co.*, 172 W. Va. 546, 550, 309 S.E.2d 45, 48 (1983) (citing *In re Werkman's Will*)

30.    "[T]he making of separate wills with reciprocal provisions was insufficient to establish the necessary contractual element." *In re Reed's Estate*, 125 W. Va. 555, 26 S.E.2d 222, 224 (1943); See also, *Wilson v. Starbuck*, 116 W. Va. 554, 182 S.E. 539, 541 (1935).

31.    "The execution of mutual wills by husband and wife, by which the testator in each devises and bequeaths his or her estate to the other, is not, alone, sufficient to establish a contract which would have the legal effect of making the two wills a joint will, and thereby make

8

inoperative the will of the survivor." Syl. Pt. 2, *In re Werkman's Will*, 122 W. Va. 583, 13 S.E.2d 73, 73 (1940).

32.    In order to prove the contractual relationship, additional circumstances must be shown to give rise to a "clear implication" that the wills were made pursuant to a common understanding. *Turner v. Theiss*, 129 W. Va. 23, 28, 38 S.E.2d 369 (1946); *In re Reed's Estate, supra; Wilson v. Starbuck, supra; Underwood v. Myer, supra.*

33.    The *Turner* Court further elaborated on the heightened standard of proof: "it is not sufficient that there are wills simultaneously made, and similar in their cross provisions, but the existence of a clear and definite contract must be shown, either by proof of an express agreement, or by unequivocal circumstances." *Turner v. Theiss*, 129 W. Va. 23, 28, 38 S.E.2d 369, 373 (1946) (citing *Edson v. Parsons*, 155 N.Y. 555, 50 N.E. 265) (emphasis added).

34.    The Court finds that the Plaintiffs cannot produce any evidence of communications with Ruth H. Drake or George W. Drake to show an intention to create a mutual and reciprocal will. *Plaintiffs' Responses to Defendant's First Set of Discovery*, at Interrogatory Nos. 26 & 27.

35.    Neither Plaintiff can offer any evidence of communications between them, or anyone on their behalf, and George W. Drake regarding the distribution of his property upon his death, George W. Drake's creation of a Will, estate planning, or any other matter alleged in the Complaint. *Plaintiffs' Responses to Defendant's First Set of Discovery*, at Interrogatory No. 14.

36.    In response to a similar question regarding the distribution of Ruth H. Drake's property upon her death, both Plaintiffs responded with "I never brought that topic up for discussion. Ruth H. Drake stated, prior to February 23, 2009, that George W. Drake had taken

9

care of my sister and me in his Will." *Plaintiffs' Responses to Defendant's First Set of Discovery*, at Interrogatory No. 13.

37.    The Court finds that nothing within either the unexecuted draft document titled Drake, Ruth - Will 5-30-00.wpd or George W. Drake's Last Will and Testament dated May 30, 2000 shows a contract, agreement, or understanding between Mr. and Mrs. Drake to make the two wills a joint will, thereby making inoperative the will of the survivor.

38.    The Court further finds that Plaintiffs can produce no affirmative evidence of additional circumstances to give rise to a "clear implication" that the wills were made pursuant to a common understanding.

39.    Plaintiffs argue there is an implication that Mr. and Mrs. Drake executed reciprocal and mutual wills because of the unexecuted draft of Mrs. Drake's Will found on Sponaugle & Sponaugle's computer system that contains reciprocal language to Mr. Drake's Will, which argument the Court has considered, *supra*. Plaintiffs further argue there is an implication that Mr. and Mrs. Drake executed reciprocal and mutual wills because of the use of the term "nephews" in Article III(d) of Mr. Drake's Will: "to my following names nieces and nephews equally, to-wit: George I. Sponaugle, II, Jim Harper Sponaugle, Mary Ann Warner, Berry Jo Caliguire, Betty Walling and Carol Greco." Plaintiffs assert that Mr. Drake did not have any nephews and four of the six named individuals are the nephews and nieces of Mrs. Drake.

40.    The Court finds that Mr. Drake's reference to Mrs. Drake's nephews as his nephews does not provide an inference or any affirmative evidence on the issue of whether Mr. and Mrs. Drake had a contractual agreement or a common understanding. Although the strict legal definition of the word "nephew" may not have been applicable to the beneficiaries in Mr.

Drake's Will, the Court does not find it unusual for individuals to refer to their spouse's nephew as their own nephew.

41. The Court finds that of the six collective nieces and nephews, only the Plaintiffs have objected to Ruth H. Drake's 2009 Will.

42. Therefore, even if the Court had found Plaintiffs met their burden of proving Ruth H. Drake executed a Will that is mutual and reciprocal to George W. Drake's Will, the Court finds that Plaintiffs can produce no affirmative evidence of an express agreement or unequivocal circumstances to show that Ruth H. Drake and George W. Drake intended to execute mutual and reciprocal wills on May 30, 2000, thereby making the wills irrevocable and the will of the survivor inoperative.

43. The Court finds that there are no genuine issues of material fact present in this case and that the Defendants are entitled to judgment as a matter of law.

### Defendants' Counterclaim

44. Defendants filed a *Counterclaim* on February 23, 2016, seeking to enforce the *in terrorem* clause contained within Article VI of the Last Will and Testament of Ruth H. Drake.

45. Article VI of the 2009 Last Will and Testament of Ruth H. Drake provides:

> Every heir, legatee, devisee, beneficiary, or the spouses of any heir, legatee, devisee or beneficiary, under this Will, who shall contest in any court any provision of this instrument, or cause any trouble or disturbance in the settlement of my estate, shall not be entitled to any devises, legacies or benefits under this Will or any Codicil hereto, or any trust created thereby, and any and all devises, legacies, and portions of the income or corpus of my estate, otherwise provided to be paid to such person shall lapse and shall be paid, distributed and passed to the remaining beneficiaries under Article III of this my Last Will and Testament. My hereinafter named Executor is specifically authorized to defend, at the expense of my estate, any contest or attack of any nature upon this Will or any Codicil hereto, or upon any paragraph or provision hereof.

11

46      Defendants argue that Ruth H. Drake intended for any beneficiary challenging her Will to receive nothing and the *in terrorem* clause was triggered by Plaintiffs' action in this Court. Defendants further argue, "Pursuant to the *in terrorem* clause, all devises, legacies, and bequests to the Plaintiffs under the Last Will and Testament of Ruth H. Drake should be lapse and be distributed to the remaining beneficiaries under Article III."

47.     Although a motion to dismiss Defendants' Counterclaim has not been filed or made, the Court has carefully considered the record and pertinent legal authority regarding the issue raised in the Counterclaim. Therefore, the Court concludes it is in the interest of judicial economy for the Court to make a ruling with regard to the Counterclaim.

48.     In West Virginia, *in terrorem* clauses are valid unless a will contest is brought with good faith and probable cause. *See Dutterer v. Logan*, 103 W.Va. 216, 137 S.E. 1 (1927).

49,     Here, George W. Drake and Ruth H. Drake married on December 18, 1948, and did not have any children George W. Drake's only heirs by consanguinity were his nieces: Plaintiff Carole Drake Greco and Plaintiff Bette Drake Walling. Ruth H. Drake's only heirs by consanguinity were her nephews and nieces: Defendant George Sponaugle, II, Jim Harper Sponaugle, Mary Ann Warner, and Betty Jo Caliguire. Defendant George Sponaugle, II, is an attorney. Plaintiffs allege that Defendant George Sponaugle, II, prepared mutual and reciprocal wills for George and Ruth Drake on or about May 30, 2000.

50.     Plaintiffs assert that the 2000 Wills left the bulk of each person's estate to the surviving spouse and if not survived by each other, the estate was to be divided equally among their six collective nieces and nephews. George W. Drake died April 10, 2002, and pursuant to his May 30, 2000 Will, Ruth H. Drake received the bulk of the estate. Thereafter, Defendant George Sponaugle, II, prepared a Will for Ruth H. Drake, which she executed on February 23,

2009. The 2009 Will gives much of the estate to Defendant George Sponaugle, II, and his wife, Kathy M. Sponaugle, rather than dividing the estate equally among the six collective nieces and nephews.

51. The Court finds the Plaintiffs acted in good faith and with probable cause in filing this matter to determine whether or not George and Ruth Drake had a contractual arrangement to execute mutual and reciprocal wills. The Court further finds that Plaintiffs properly utilized the court system to ascertain their rights, given Plaintiffs' allegation that Ruth H. Drake's 2009 Will gave the several million dollar estate to Defendant George I. Sponaugle, II, and his wife, rather than dividing the estate equally among the six collective nieces and nephews as the alleged 2000 mutual and reciprocal Wills did. (Comp. ¶ 19.)

**WHEREFORE** the Court does hereby **ADJUDGE** and **ORDER** that Defendants' *Motion for Summary Judgment* is **GRANTED**. It is further **ORDERED** that Plaintiffs' Complaint is hereby dismissed with prejudice. It is further **ORDERED** that Defendants' Counterclaim is hereby dismissed with prejudice.

❖ The Circuit Clerk shall send a copy of this Order to all counsel of record as listed below.

❖ The objection of the parties to any and all adverse rulings is noted.

❖ Nothing further remaining to be done in this matter, the Circuit Clerk shall remove this action from the docket and place it among the matters ended.

ENTERED this 12ᵗʰ day of January, 2017.

Honorable H. Charles Carl, III
TWENTY-SECOND JUDICIAL CIRCUIT

FILED
DATE
Clerk of Circuit Court
Pendleton County

13

Scott Curnutte (WV State Bar No. 5780)
Curnutte Law
P.O. Box 1905
Elkins, WV 26241
304-636-5904
*Counsel for Plaintiffs*

Jerry D. Moore (WV State Bar No. 2609)
Jared T. Moore (WV State Bar No. 11988)
The Moore Law Firm, PLLC
P.O. Box 8
74 Walnut Street
Franklin, WV 26807
(304) 358-2208
*Counsel for Defendants George I. Sponaugle, II
and The Estate of Ruth H. Drake*

George Isaac Sponaugle, III
Sponaugle and Sponaugle
Attorneys at Law
P.O. Box 578
223 Chestnut Street
Franklin, WV 26807

14