386 S.E.2d 847

**Beverly Jean HANLON**

v.

**BOONE COUNTY COMMUNITY ORGANIZATION, INC., etc., et al., and Ruth Scott.**

**No. 18840.**

Supreme Court of Appeals of West Virginia.

Nov. 17, 1989.

Victor A. Barone, Bobby R. Hale, Charleston, for Beverly Jean Hanlon.

Peter A. Hendricks, Madison, Harry M. Hatfield, Madison, for Boone County Community Organization, Inc., etc.

Per Curiam:

The Circuit Court of Boone County denied a writ of mandamus requested by Beverly Jean Hanlon who alleged that she had been wrongfully discharged by the Boone County Community Organization, Inc. (hereinafter "BCCO"). The denial came after this Court, at the request of Ms. Hanlon, issued a writ of mandamus on March 14, 1988 because her circuit court case had been pending for approximately two years without some necessary preliminary rulings. On appeal, Ms. Hanlon asserts that the circuit court's denial of a writ of mandamus was premature because there was no hearing of the merits and there were several material issues of fact. We agree and hold that the circuit court erred in entering judgment prematurely.

Ms. Hanlon was employed as the director of BCCO from 1969 until June 1, 1985. After a six month leave of absence, Ms. Hanlon attempted in vain to return to work on December 1, 1985. Ms. Hanlon contends that BCCO informed her that she "resigned" as of December 1, 1985 and the director position was occupied by Ruth Scott, the intervenor-respondent, below. Ms. Scott and BCCO content that Ms. Hanlon accepted other employment and resigned, but, as a favor to Ms. Hanlon, BCCO delayed her resignation for a six month leave of absence so that her medical insurance would remain in effect. Ms. Scott contends that Ms. Hanlon induced her to quit her previous employment to become BCCO's director.

BCCO was created by the Boone County Commission pursuant to *W. Va. Code* 7–13–1 *et seq.* [1986] and various titles of the federal Economic Opportunity Act of 1964 (Public Law 88–452) and is affiliated with Multi–County Community Action Against Poverty, Inc. (hereinafter "Multi–Cap"). BCCO adopted Multi–Cap's employee policies and procedures, including its grievance procedure. After BCCO denied Ms. Hanlon reinstatement, she filed a grievance that apparently followed the normal progression. In the final step on February 4, 1986, Multi–Cap's board of directors considered Ms. Hanlon's grievance and directed that BCCO reinstate Ms. Hanlon. However, on February 24, 1986, BCCO's board of directors rejected Multi–Cap's directive and on May 27, 1986, Multi–Cap withdrew the directive and approved the hiring of Ms. Scott as BCCO's director.

On August 26, 1986, Ms. Hanlon petitioned the circuit court for a writ of mandamus to compel BCCO to reinstate her with back pay. Ms. Hanlon alleges that Multi–Cap's attempt to withdraw its February 4, 1986 directive was invalid because she was given no notice of the May 27, 1986 meeting and one of the Multi–Cap directors had a conflict of interest. After the rule to show cause was issued, on October 1, 1986 BCCO responded alleging several affirmative defenses and Ms. Scott, who became director of BCCO in January 1986, moved the court to allow her to intervene. As the result of hearings held on October 22, 1986 and May 7, 1987, the circuit court allowed Ms. Scott to intervene by order dated May 15, 1987. A status conference was held on September 16, 1987 in which counsel for the parties discussed the various aspects of the case including the evidence that they anticipated presenting at trial and, indirectly, a motion for a protective order.[1] The circuit court noted that various evidence was not part of the record and that some evidence was needed for a decision on the

---

**1.** On appeal, BCCO and Ms. Scott allege that at the September 16, 1987 hearing, Ms. Hanlon's counsel indicated that no additional evidence was required and that a decision could be made on the pleadings; thereby, inviting the error claimed on appeal. However, the record indicates that Ms. Hanlon's counsel wanted to limit the scope of the hearing by not rehearing the grievance. Whereas, BCCO and Ms. Scott maintained that testimony about the grievance was required in order to prove their affirmative defenses.

merits. After the circuit court, *sua sponte,* raised the question of the appropriateness of mandamus, counsel were requested to submit opinions on the question within a week and a ruling on the protective order was delayed.

On December 18, 1987, Ms. Hanlon, *pro se,* submitted a letter to this Court complaining about the delay and seeking to compel the circuit court to rule in her case and to set the case for trial. In *Beverly J. Hanlon v. Hon. E. Lee Schlaegel,* No. 18255 (Filed March 14, 1988) (1988 Syllabus Service 81), this Court, concerned about the possibility of reimbursement from public monies, directed that a ruling be entered within thirty days.

On April 22, 1988, the circuit court entered an order denying the writ of mandamus because Multi–Cap issued two directives of opposite effect. The circuit court held that Ms. Hanlon failed to show that her "claim [was] clear and certain, and the duty sought to be exercised [was] a positive command so plainly described as to be free from doubt."

## I

While the record demonstrates that the circuit court was familiar with the case, the only evidence is a memorandum prepared by Multi–Cap's president concerning the dates of Multi–Cap's actions. Numerous material factual issues remain to be developed by all parties. During the September 16, 1987 hearing the circuit court noted that Ms. Hanlon needed to present evidence on the validity of Multi–Cap's first directive and the invalidity of Multi–Cap's second directive. BCCO and Ms. Scott need evidence to develop their affirmative defenses.[2]

In Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969), we stated:

A writ of mandamus will not issue unless three elements coexist–(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

In Syllabus Point 5, *State ex rel. Withers v. Bd. of Ed. of Mason County,* 153 W.Va. 867, 172 S.E.2d 796 (1970), we noted that "caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law" will permit compulsion of discretionary activity by a writ of mandamus.

In Syllabus point 3, *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963), we firmly established that a judge should hear evidence at trial and summary judgment is employed only when there is no genuine issue of material fact. Consequently, we have traditionally viewed summary judgment with reservations and have required the facts of the case to be viewed in a light most favorable to the party against whom the judgment was rendered. In the present case, the record indicates that Ms. Hanlon was not given the opportunity to prove that she met the criteria for a writ of mandamus. Even if Ms. Hanlon is able to prove the three elements necessary for mandamus, BCCO and Ms. Scott, through their affirmative defenses, might still prevail.

Moreover, the record does not show that any of the parties made a written motion for summary judgment. This Court's March 14, 1988 order to rule cannot be considered a directive to the circuit court to enter judgment on the merits. The intent of our order was to require the circuit court to make necessary preliminary rulings and to proceed to a hearing on the merits. In Syllabus Point 2, *Gavitt v. Swiger,* 162 W.Va. 238, 248 S.E.2d 849 (1978), we stated:

Ordinarily, in the absence of a written motion for summary judgment by one of

---

**2.** We note Ms. Hanlon's testimony is necessary and vital to prove her case and to develop the affirmative defenses, namely, equitable estoppel, laches, unclean hands, hardship on innocent parties, BCCO's by-laws concerning the director position, and validity of Multi–Cap's withdrawal of previous directive. The circuit court should, as a first step, allow the deposition of Ms. Hanlon to proceed.

the parties, the court is not authorized *sua sponte* to grant a summary judgment.

In Syllabus Point 4, *Southern Erectors, Inc. v. Olga Coal Co.*, 159 W.Va. 385, 223 S.E.2d 46 (1976), we recognized a limited exception to the general rule:

> Where a court acts with great caution, assuring itself that the parties to be bound by its judgment have had an adequate opportunity to develop all of the probative facts which relate to their respective claims, the court may grant summary judgment under Rule 56, W.Va.R.C.P., *sua sponte.*

This case does not come within that exception because the record does not demonstrate that the parties were given the opportunity to prove their respective positions. Both the general rule and its limited exception, indicate that judgments must be based on the merits after the parties have an opportunity to prove their allegations and to respond. The circuit court's ruling was simply premature. In *Bd. of Education v. Van Buren & Firestone Architects, Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980), we observed that "a decision for summary judgment before discovery has been completed must be viewed as precipitous." *Calvert Fire Ins. v. Larry A. Bauer*, 175 W.Va. 286, 332 S.E.2d 586, 589 (1985).

For the above stated reasons, the judgment of the Circuit Court of Boone County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.