# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**STEPHEN U.,**
**Plaintiff Below, Petitioner**

**v.) No. 25-ICA-204** (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2020-C-155)

**CAREN J.,**
**Defendant Below, Respondent**

**FILED**
**September 30, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stephen U.[1] appeals the Circuit Court of Kanawha County's May 8, 2025, Order Denying Motions and Dismissing Case from the Docket. Respondent Caren J. did not participate in this appeal.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal represents another in a series of incessant attempts by petitioner to argue that respondent is a gestational surrogate, petitioner is the biological mother of the subject children, respondent was incorrectly designated the children's mother on their birth certificates pursuant to West Virginia Code § 16-5-10(e) (2006);[3] and that respondent was improperly awarded custody of the children. Because the history of the parties and their children has been thoroughly addressed in prior decisions of the Supreme Court of Appeals of West Virginia ("SCAWV"), a recitation of the underlying facts is unnecessary.

---

[1] Consistent with the Supreme Court of Appeals of West Virginia's long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] Petitioner is self-represented.

[3] Although this provision was not substantively affected by the recent amendments to West Virginia Code § 16-5-10 (2024), we cite to the former version of the statute because it was in effect at the time the birth certificates were issued.

1

These matters were first addressed by the SCAWV in *S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4, 2019) (memorandum decision) wherein the SCAWV affirmed the Family Court of Mason County's determination that the parties' purported gestational surrogacy agreement was unenforceable, respondent is the legal mother of the children, and that it was in the children's best interest to remain in her primary custody. *Id.* at \*5. In *S.U. I*, the SCAWV also specifically found: "Our review of the record uncovers no error. . . . Succinctly stated, [petitioner] failed to submit competent evidence to overcome the presumption set forth in West Virginia Code § 16-5-10(e) [(2006)] that 'the woman who gives birth to the child is presumed to be the mother[.]'" *Id.* at \*3-4.

Since *S.U. I*, petitioner has relitigated those issues in subsequent litigation and appeals. However, those attempts have been soundly rejected by the SCAWV, often on res judicata grounds. *See S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824 (W. Va. Feb. 2, 2021) (memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption I*"), No. 20-0039, 2021 WL 4935772 (W. Va. Oct. 13, 2021) (memorandum decision); *In re The Children of: S.U. v. C.J.* ("*S.U. III*"), Nos. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476 (W. Va. Oct. 13, 2021) (memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption II*"), No. 21-0165, 2022 WL 293352 (W. Va. Feb. 1, 2022) (memorandum decision); *In re S.U.* ("*S.U. IV*"), No. 21-0258, 2022 WL 1556113 (W. Va. May 17, 2022) (memorandum decision); *see also S.U. v. Cent. Atl. Legal Grp.*, No. 20-1006, 2022 WL 293551 (W. Va. Feb. 1, 2022) (memorandum decision) (affirming circuit court's determination that petitioner is a vexatious litigant based upon petitioner's repeated attempts to relitigate issues involving C.J. and the children., including suing the law firm representing C.J. and raising the same arguments regarding surrogacy and the birth certificates); *S.U. v. C.J.* ("*S.U. V*"), No. 21-0322, 2022 WL 3905107 (W. Va. Aug. 30, 2022) (memorandum decision) (affirming the lower court's imposition of prefiling injunction against petitioner); *S.U. v. Cent. Atl. Legal Grp.*, No. 22-0441, 2023 WL 6862166 (W. Va. Oct. 18, 2023) (memorandum decision) (affirming circuit court's imposition of attorney's fees and costs against petitioner based upon vexatious conduct). Moreover, petitioner was recently unsuccessful in attempts to raise the same issues before this Court. *See Stephen U. v. State*, No. 24-ICA-326, 2025 WL 1249486 (W. Va. Ct. App. Apr. 29, 2025) (memorandum decision) (concluding that petitioner's claims were barred by the doctrine of res judicata); *Stephen U. v. Caren J.*, No. 24-ICA-506, 2025 WL 1604142 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (affirming the circuit court's dismissal of petitioner's complaint on res judicata and collateral estoppel grounds).

In its decisions on petitioner's subsequent appeals, the SCAWV has reiterated two important rulings from *S.U. I*.: "The first is that there was never a valid, enforceable gestational surrogacy agreement between petitioner and respondent . . . The second is that respondent is the legal mother of all four children." *S.U. III*, 2021 WL 4936476, at \*1 (citations and quotations omitted); *Adoption II*, 2022 WL 293352, at \*1 (citations and quotations omitted); *S.U. V*, 2022 WL 3905107, at \*1 (citations and quotations omitted);

2

*see also S.U. IV*, 2022 WL 1556113, at *1 ("Further, we have stressed that respondent 'is the legal mother of all four children.'") (citations omitted).

Turning to the present case, on February 19, 2020, petitioner filed a complaint against respondent asserting claims for unjust enrichment and intentional infliction of emotional distress ("IIED"). The complaint set forth the same operative facts which have served as the predominant theme of *S.U. I* and its progeny.

In simplest terms, the complaint alleged that as a result of *S.U. I*,[4] respondent was unjustly enriched because she was improperly identified as the children's legal mother, the children were placed in her custody, and as a result, she was able to form a bond with them. Petitioner maintains this was detrimental because petitioner paid for respondent's embryo implantation and related expenses; as a result of respondent's actions and the SCAWV's ruling in *S.U. I*, petitioner was deprived of the right to the care, custody, and control of the children; and that respondent's status as a gestational surrogate cannot infringe upon those rights. Regarding the IIED claim, the complaint characterized respondent's conduct as "atrocious and outrageous," respondent acted with the intent to inflict emotional distress upon petitioner, and that "[n]o reasonable and fit parent could be expected to endure their child[ren] being taken and raised by a third party." As relief, petitioner requested that the children be immediately placed solely in petitioner's legal and physical custody, and that respondent be removed from the children's birth certificates. Alternatively, petitioner sought a jury trial for the purposes of determining damages for "all expenses associated with the creation of [petitioner]'s children; compensation for the genetic material of the biologic[al] parents; damages for the loss of custody of [petitioner]'s children; and[ ] damages related to [respondent]'s [IIED]."

Simultaneous to the filing of the complaint, petitioner filed an Emergency Motion to Place Children with Biologic[al] Parent. The motion reiterated petitioner's earlier assertions that respondent was a gestational surrogate, had no parental rights to the children, and was mistakenly identified on the children's birth certificates as their mother. For these reasons, petitioner contended that it was detrimental to the children's well-being to remain in respondent's custody, and that respondent's exercise of custody violated petitioner's statutory and constitutional rights to the children.

On March 6, 2020, the circuit court entered its order denying the emergency motion. In its order, the court found that petitioner had filed this motion only three months after the issuance of *S.U. I* wherein the SCAWV upheld the family court's determinations related to validity of the surrogacy agreement and custody of the subject children. The circuit court determined that petitioner's emergency motion requested the court to disregard and

---

[4] In other words, because *S.U. I* determined that there was not a valid and enforceable surrogacy agreement, petitioner sought alternative relief through the quasi-contract principle of unjust enrichment.

3

overturn the family court's rulings which were affirmed by the SCAWV in *S.U. I*. The circuit court expressly declined to do so.

On March 10, 2020, petitioner filed a motion requesting that the circuit court issue findings of fact and conclusions of law in support of its March 6, 2020, order.[5] On March 19, 2020, in lieu of filing an answer, respondent filed a motion to dismiss the complaint. On April 16, 2020, petitioner filed a motion requesting a telephonic hearing for the purposes of entering a scheduling order in the case.

On August 20, 2020, the circuit court entered a supplemental order which set forth findings of fact and conclusions of law, incorporated them by reference into the March 6, 2020, order, and denied the emergency motion. The court's supplemental order determined that the parties and petitioner's complaint were subject to the issues previously litigated in *S.U. I*. Specifically, it was noted that petitioner's complaint and motion both sought custody of the children; matters of custodial allocation were squarely within the jurisdiction of family courts pursuant to Chapter 48 of the West Virginia Code; and although circuit courts are courts of general jurisdiction, petitioner offered no legal authority upon which the court could disturb the family court's or SCAWV's several determinations from *S.U. I*, including the allocation of the children's custody with respondent.

Thereafter, petitioner filed several additional motions in the case. Among them, petitioner filed an Emergency Motion for Declaratory and Injunctive Relief on October 2, 2020; an Emergency Ex-Parte Motion for Declaration of Parentage and for Return of Children on December 21, 2021; and the Motion to Compel Discovery and Second Motion for Scheduling Order on May 1, 2025.

On May 8, 2025, the circuit court entered the order presently on appeal. In that order, the circuit court noted that it had previously denied petitioner's emergency motion on March 6, 2020, and supplemented that ruling with additional findings of fact and conclusions of law on August 20, 2020. The circuit court stated that the August 20, 2020, order was intended as a final order on the merits of the case. Based upon its prior findings, the court denied petitioner's subsequent motions as moot, ordered that no further motions would be considered in the matter, and expressly dismissed the case in its entirety. This appeal followed.

---

[5] Around April 23, 2020, petitioner filed a combined petition for writ of prohibition and mandamus with the SCAWV, seeking an order compelling the circuit court to issue the requested findings of facts and conclusions of law. The SCAWV refused the petition by order entered on January 28, 2021.

In this appeal, we treat the May 8, 2025, order as a sua sponte dismissal by the circuit court.[6] To that end, when reviewing a circuit court's sua sponte dismissal of a petition or complaint, we apply the following standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997); *Shenandoah Sales & Serv., Inc. v. Assessor of Jefferson Cnty.*, 228 W. Va. 762, 766, 724 S.E.2d 733, 737 (2012) (applying standard of review to circuit court's sua sponte dismissal of case).

In a single assignment of error, petitioner makes the overarching argument that the circuit court erred by dismissing the case without entering a scheduling order or ruling upon the unjust enrichment and IIED claims raised in the complaint. In support of this claim, petitioner contends that because there is no order in this case directly ruling on the complaint's causes of action or respondent's motion to dismiss, the May 8, 2025, order is interlocutory and not reviewable by this Court. Petitioner also asserts that the complaint proves the elements of both causes of action, and that state and federal constitutions require petitioner to be recognized as the children's mother from the outset of their birth. All these contentions lack merit.[7]

First, petitioner asserts that the order on appeal is not a final order, but rather, an interlocutory order over which this Court does not have jurisdiction. We do not agree.

It has been held that, "[t]he key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect." Syl. Pt.

---

[6] In reaching this conclusion, we note that while respondent previously filed a motion to dismiss, for reasons not present in the record, no further effort was made by the court or the parties to effectuate a ruling on that motion. Further, the order on appeal is devoid of any indication that the dismissal of the underlying case was a direct result of respondent's motion to dismiss. Therefore, it must be concluded that the court made the discretionary determination to dismiss the case on its own motion.

[7] Noticeably, and rightfully so, petitioner does not challenge the circuit court's findings with respect to the jurisdiction of circuit courts and family courts. Rather, this argument rests on the alleged failure of the circuit court to dismiss the case without ruling upon the causes of actions set forth in the complaint.

1, in part, *State ex rel. McGraw v Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). "If the effect of a dismissal of a complaint is to dismiss the action, such that it cannot be saved by amendment of the complaint, or if a plaintiff declares his intention to stand on his complaint, an order to dismiss is final and appealable." Syl. Pt. 1, *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 172 W. Va. 743, 310 S.E.2d 675 (1983).

As previously noted, the order before us on appeal did three primary things. Namely, citing its March 6, 2020, and August 20, 2020, orders, the circuit court denied petitioner's several pending motions, prevented the filing of any future motions, and dismissed the entire case. While the March 6, 2020, and August 20, 2020, orders speak of both the complaint and petitioner's emergency motion, neither order contains any language expressly dismissing the case and, thus, arguably are not final orders.[8] However, the May 8, 2025, order settles the issue of finality for the purposes of this appeal. In that respect, the distinguishing characteristic is that the May 8, 2025, order both denies petitioner's motions *and* dismisses the case. Moreover, because the court coupled its dismissal of the action with overt language stating that the matter was closed and no further filings would be permitted, the court clearly intended for its order to dispose of the complaint and all other matters in the case. Thus, the court's decision was indeed final, there was no action petitioner could take below to save the litigation, and as a result, petitioner's only recourse was to file this appeal. *See Barker v. Traders Bank*, 152 W. Va. 774, 779, 166 S.E.2d 331, 335 (1969) (stating that once a court enters an order dismissing an action, it "is a final disposition of the case, after which ordinarily the trial court can take no further action and the losing party's only recourse is to seek relief in an appellate court."). Accordingly, we conclude that the circuit court's May 8, 2025, order is a final order and subject to this Court's jurisdiction. *See* W. Va. Code § 51-11-4(b)(1) (stating that the Intermediate Court of Appeals has appellate jurisdiction over "[f]inal judgments or orders of a circuit court in all civil cases, including, but not limited to, those in which there is a request for legal or equitable relief, entered after June 30, 2022[.]"). Thus, we reject petitioner's untenable argument on this issue.[9]

---

[8] The context of these two orders, when taken as a whole, evidence that petitioner's complaint was actually an action for custodial allocation, *S.U. I* controlled those issues, and the circuit court did not have the authority to disturb the family court's or SCAWV's determinations therein. While the language of the March 6, 2020, and August 20, 2020, orders could be interpreted to have the effect of a final order, a countervailing assessment could also be made. Nevertheless, the court's dismissal of the case in its May 8, 2025, order renders such analysis in this case unnecessary. However, we take this opportunity to stress that in future orders, lower courts must strive to use language which ensures that the finality of their decisions, if intended, is indubitably transparent to the parties and reviewing courts.

[9] We further note that petitioner's argument on this issue is full of contradiction. For example, it is baffling that petitioner filed this appeal, yet claims that this Court lacks jurisdiction to hear it. Noticeably, petitioner did not file a motion seeking to voluntarily

Now we turn to petitioner's remaining arguments regarding the claims of unjust enrichment and IIED as set forth in the complaint. However, we find that it is unnecessary to discuss these specific arguments in detail because, yet again, they all turn on petitioner's assertion that respondent is not the children's mother, a position that the SCAWV rejected in *S.U. I* and has continued to reject with resounding vigor in all of petitioner's subsequent attempts to collaterally attack *S.U. I*. Likewise, these contentions have met the same fate in petitioner's earlier appeals to this Court. Presently, much like prior appeals, petitioner attempts to avoid this fact by beclouding the record in prior matters and attempting to present issues narrowly when it is obvious that the underlying issue in all of these cases has been and remains petitioner's attempt to obtain custody of the children. In other words, "[a]s has become clear . . . petitioner refuses to accept the validity and finality of these determinations." *S.U. IV*, 2022 WL 1556113, at * 1.

Specifically, throughout the proceedings below and now on appeal, petitioner has consistently referred to respondent as a third-party, biological stranger, or gestational surrogate who fraudulently induced petitioner to pay for all costs associated with respondent's pregnancy,[10] and asserted custody over the children, and argues that respondent was only identified as the children's mother so that birth certificates could be issued pursuant to West Virginia Code § 16-5-10(e), and the family court's jurisdiction was limited solely to that issue. However, as previously established, both this Court and the SCAWV have soundly refused petitioner's attempts to relitigate *S.U. I* in later appeals and revealed petitioner's complaints and petitions in those cases to be poorly disguised attempts to perpetuate petitioner's desire "to divest [respondent] of her custody of their children and even her status as the children's mother." *Adoption II*, 2022 WL 293352, at *1. Consistent with our prior rulings, we decline to entertain petitioner's obtuse assertions in this appeal.

We are also presented with rehashed arguments that respondent's status as the children's mother and placement of children in her custody violates petitioner's statutory and constitutional rights. We refuse to address these arguments. As this Court previously

_____

dismiss this appeal on those grounds and did not file a motion for direct review of this case with the SCAWV. Equally perplexing are petitioner's requests for relief on appeal. Namely, despite insisting that this Court lacks jurisdiction, petitioner does not seek dismissal of the appeal (which is the logical request a party makes when they claim that a court lacks jurisdiction), but rather, asks us to rule that respondent is a biological stranger and gestational surrogate who has been unjustly enriched by receiving custody of the children, and to order that the children be immediately returned to petitioner's care, custody, and control. The inanity and irrationality of these conflicting positions only further highlight the baselessness of petitioner's argument on this issue.

[10] Specifically, petitioner claims to have "wholly paid for the [in vitro fertilization] process and all expenses related thereto."

stated, "we find that petitioner's repackaged arguments are nothing more than thinly-veiled attempts to relitigate *S.U. I*." *Stephen U. v. Caren J.*, No. 24-ICA-506, 2025 WL 1604142, at *3 (W. Va. Ct. App. June 6, 2025) (memorandum decision). In that decision, we also joined with the sentiments of the SCAWV, noting:

> In [petitioner]'s current appeals, petitioner makes extended arguments that [petitioner]'s constitutional rights have been violated by the family court's decision to elevate the rights of a gestational surrogate above the rights of the natural parent. It is unnecessary to address these arguments, however, because the bedrock upon which they are constructed is fatally flawed. Petitioner must recognize that respondent is the children's mother, as we have repeatedly stressed, and this Court will continue to refuse to entertain any arguments based on [petitioner's] assertion that she is simply a gestational surrogate, an assertion that lacks an evidentiary basis in any record before this Court.

*Id.* (quoting *S.U. III*, 2021 WL 4936476, at *3).

For these same reasons, petitioner's statutory law claims are also meritless and it is unnecessary to belabor petitioner's related arguments. Simply stated, petitioner's entire contention on this issue rests on the use of unrelated provisions of West Virginia Code in hopes of reviving petitioner's long-exhausted challenge regarding the designation of respondent as the children's mother, and the family court's application of West Virginia Code § 16-5-10(e) was affirmed by the SCAWV in *S.U. I*. and has been consistently upheld by that Court's successive rulings and, similarly, by the rulings of this Court on that same issue. It bears repeating that this issue has been categorically decided in prior appeals, and we decline to waste judicial resources by addressing the matter further.

Moreover, while the circuit court did not specifically invoke res judicata or collateral estoppel, it appears that the court relied on one or both doctrines in finding that petitioner's claims were precluded by *S.U. I* and petitioner's subsequent appeals. With respect to res judicata, also known as claim preclusion, we apply the following three-factor test:

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

8

Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (1997).

Whereas collateral estoppel, otherwise known as issue preclusion, involves the application of a four-part test:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

As more thoroughly set forth in our recent decision in *Stephen U.*, another of petitioner's cases involving the same parties and virtually identical claims, we find that both tests are satisfied here. The parties are the same as the parties in *S.U. I*, the issues are the same, the claims based on them are either the same or claims which could have been raised, there was a final merits adjudication in *S.U. I*, and petitioner had a full and fair opportunity to litigate these positions in that matter. *See Stephen U.*, 2025 WL 1604142, at *3-4.

It is true that "generally, circuit courts are prohibited from sua sponte dismissing claims." *Humphrey v. Deal*, No. 19-1009, 2020 WL 6482785 at *3 n.2 (W. Va. Nov. 4, 2020) (memorandum decision) (citing Syl. Pt. 2, *Hanlon v. Boone Cnty. Cmty. Org., Inc.*, 182 W. Va. 190, 386 S.E.2d 847 (1989)). However, as the SCAWV noted in *S.U. II*, "as we acknowledged in *Humphrey*, 'nevertheless, there are exceptions[.]'" *S.U. II*, 2021 WL 365824, at *4. To that end, we find the circuit court's decision to dismiss petitioner's complaint in this case to be consistent with *S.U. II* wherein the circuit court dismissed petitioner's petition sua sponte on res judicata grounds, finding the case barred by *S.U. I*. *Id.* at *2. In affirming the circuit court on appeal, the SCAWV noted:

> In short, this Court has previously recognized that "'[a] court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste[.]' *Bezanson v. Bayside Enterprises, Inc.*, 922 F.2d 895, 904 (1st Cir. 1990)." *Gulas v. Infocision Mgmt. Corp.*, 215 W. Va. 225, 229 n.4, 599 S.E.2d 648, 652 n.4 (2004). . . . While the circuit court in the instant matter was not the same court that previously decided the issue involved in this appeal, it was clearly aware that the issue of whether respondent was the children's legal mother had been squarely decided by this Court. Therefore, under the limited circumstances of this case, we find no error in the circuit court's decision to dismiss the petition as barred by res judicata in the interest of avoiding

judicial waste. . . . Indeed, we have recognized that "[*r*]*es judicata* 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.' " *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W. Va. 549 [,560], 803 S.E.2d 519 [,530] (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Accordingly, we find that petitioner is entitled to no relief.

*Id*. at *3-4. We find this rationale equally applicable to petitioner's present appeal and, thus, we cannot conclude that the circuit court's May 8, 2025, dismissal of the case was an abuse of discretion.

Lastly, we address petitioner's argument that the circuit court erred by dismissing the case when no scheduling order had been issued. While we acknowledge that petitioner is correct that Rule 16(b) of the West Virginia Rules of Civil Procedure states that the court "shall" enter a scheduling order, we find that under the facts of this case, the circuit court's failure to enter a scheduling order was, at most, harmless error. "Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way[] affects the outcome of the [case]." *Orphanos v. Rodgers*, 250 W. Va. 442, 461, 903 S.E.2d 623, 642 (Ct. App. 2024) (quoting *Reed v. Wimmer*, 195 W. Va. 199, 209, 465 S.E.2d 199, 209 (1995)). As previously established, the underlying case was yet another illegitimate attempt by petitioner to revive issues previously decided by *S.U. I* and its progeny. Critically, application of either res judicata or collateral estoppel would bar petitioner's complaint in this case. Thus, it would be futile to remand this case to circuit court for entry of a scheduling order or a subsequent ruling on the merits. *See Bickford v. Workforce W. Va.*, No. 22-ICA-276, 2023 WL 7202564, at *4 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (citations omitted) ("The law does not require the doing of a futile act.").

Accordingly, we find no reversible error and affirm the circuit court's May 8, 2025, order.

Affirmed.

**ISSUED:** September 30, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White